UNITED STATES of America, Plaintiff-Appellee,

v.

Robert Allan Laud HUMPHREYS, Defendant-Appellant.

No. 71–1137.

United States Court of Appeals, Seventh Circuit.

Feb. 25, 1972.

Richard Shaikewitz, Wiseman, Shaikevitz & McGivern, Alton, Ill., Melvin M. Belli, Belli, Ashe, Ellison, Chovlos & Lieff, San Francisco, Cal., for defendant-appellant.

Donald B. Mackay, U. S. Atty., J. William Roberts, Asst. U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Before DUFFY and KNOCH, Senior Circuit Judges, and GRANT *, District Judge.

DUFFY, Senior Circuit Judge.

Defendant was indicated by a grand jury for violating both Title 50, U.S.C. App. § 462 (Interference with the Selective Service Act of 1967) and Title 18 U.S.C. § 1361 (Wilful destruction of United States property of a value less than $100). Defendant entered a plea of guilty to the latter charge.

The District Judge accepted the plea and on motion, ordered a presentence investigation and consideration of probation. The felony charge against defendant (50 U.S.C. § 462) was dismissed on motion of the United States Attorney.

After the presentence investigation had been completed and was submitted to the Court, the District Judge held a hearing on the application for probation. He also read a "Sentencing Memorandum" which had been prepared upon behalf of the defendant and his counsel. Witnesses were heard upon behalf of the defendant and he also testified in his own behalf.

Defendant told the Court that at the time of the occurrences herein he was a Professor at the University of Southern Illinois at Edwardsville, Illinois; also, that presently he was Associate Professor of Criminal Justice at the State University of New York. He also told of

* Chief District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

two research programs in which he was engaged.

The Judge indicated he wanted to hear from occurrence witnesses. Mrs. Daniels, the Executive Secretary of the Selective Service office in Edwardsville, as well as several of her asssistants, testified.

Mrs. Charleston, one of the assistants, testified that on May 5, 1970, she heard a loud noise and then attempted, at Mrs. Daniels' request, to close the door to the Selective Service office. However, a man in a clergyman's dress (subsequently identified as the defendant) pushed the door open and said "Oh, no, we are coming through." She saw the defendant tear up a memorandum which had been received from Selective Service Headquarters.

Another employee, Mrs. Thorpe, heard the commotion of the crowd and heard the defendant say "No, we are coming in." She stated that about one hundred people were "packed in there." She also saw defendant jerk a framed picture of the President of the United States off the wall and bang it against the corner of a desk shattering the glass in the frame. Defendant then extracted the picture from the frame, stood on the desk and proceeded to tear the President's photo into bits.

Defendant stated that on May 5, 1970, a large number of students had gathered on the campus of Southern Illinois University, protesting the invasion of Cambodia and the death of students at Kent State University. Defendant claims he did a good deed by directing the students away from college buildings to the downtown courthouse and, at defendant's suggestion, to the Selective Service office housed in the United States Post Office.

Defendant's explanation of taking the President's picture from the wall and destroying it before the assembled students was that he was urging each of the demonstrators to take a piece of the picture as a "symbolic protest" and to return home to talk over the day's events.

Yet, the evidence is uncontroverted that defendant was the leader of the protest group as it entered the Selective Service office. From the facts presented by defendant he appeared to be one of the self-proclaimed leaders of the protest. The Selective Service office was entered by the protestors and Government property was destroyed. The felony charge against defendant was dropped by the United States Attorney, and defendant was found guilty of the misdemeanor by the trial court. While defendant could have faced a possible one year's imprisonment, the trial judge sentenced him to four months in a jail-like institution, and probation.

Upon appeal, defendant asserts the presentence or probation report prepared by a probation officer should have been disclosed by the District Court pursuant to defendant's motion for disclosure filed on January 5, 1971; that the denial of this motion was reversible error and an abuse of the trial court's discretion.

Both the attorney for defendant and the Assistant United States Attorney stated they did not know what was in the presentence report. The Judge then stated that neither the defendant nor the Government would be allowed to see the presentence report.

Claiming surprise, defendant's counsel requested an opportunity to present additional testimony. This motion was denied on the ground that a full hearing had been held and any further testimony would be cumulative. However, the Court stated that defendant would be permitted to withdraw his plea of guilty if he thought he were being treated unfairly. The defendant declined to do so.

The Court then gave defendant an opportunity to express any further feeling he had. Defendant once again summarized the reasons why he thought he should be granted probation.

The District Court sentenced defendant to the custody of the Attorney General of the United States for a period of one year with the provision that he

serve four months in a jail-type institution; that the balance of the sentence be suspended and that defendant be placed on probation for a period of three years.

In considering whether defendant was fairly treated, it might be noted that on six occasions at the probation hearing, the District Judge offered the defendant an opportunity to withdraw the plea of guilty. On each occasion, defendant declined to do so.

Rule 32(c)(2) of the Federal Rules of Criminal Procedure provides: " . . . The court before imposing sentence may disclose to the defendant or his counsel all or part of the material contained in the report of the presentence investigation. . . . "

The Supreme Court has spoken. In Gregg v. United States, 394 U.S. 489, at page 492, 89 S.Ct. 1134 at page 1136, 22 L.Ed.2d 442 (1969) it stated: "Presentence reports are documents which the rule does not make available to defendant as a matter of right."

In many districts, disclosure of the presentence report by the trial court has resulted in improper pressures imposed on confidential informants whose testimony is included in the report. The practice in these districts has been to treat the presentence report as a confidential document for consideration solely by the trial court.

Disclosure of presentence reports was discussed in Baker v. United States, 388 F.2d 931, at page 933 (4 Cir., 1968):

"Indeed, there could be danger in delivering it [the report] to the defendant or his attorney for scrutiny. It could defeat the object of the report—to acquaint the court with the defendant's background as a sentencing guide—by drying up the source of such information. See United States v. Fischer, 381 F.2d 509 (2 Cir. 1967). To illustrate, the probation officer could be deprived of the confidence of trustworthy and logical informants—persons close to the accused. . . ."

The defendant herein was given great latitude in presenting to the trial court a true picture of his character in the Sentencing Memorandum and the day-long hearing. By permitting this disclosure of character evidence, we feel the trial judge obviated the need for disclosure of the presentence report in this case.

■ We hold that it was not error for the District Judge, in his discretion, to refuse to disclose to defendant the contents of the presentence report.

Defendant also argues that this Court is vested with power to review and modify the sentence imposed by the District Court. Defendant relies on United States v. Wiley, 267 F.2d 453 (7 Cir. 1959), and also a line of cases to the effect that except in the most "extraordinary circumstances," we have no jurisdiction to intervene and review a sentence imposed by the District Court. Simpson v. United States, 342 F.2d 643 (7 Cir., 1965); United States v. Rook, 424 F.2d 403, 406 (7 Cir., 1970). Defendant urges such "extraordinary circumstances" existed in this case. The sentence imposed by the District Court of four months' mandatory imprisonment and thirty-six months' probation under 18 U.S.C. § 3651 was disparate with the offense.

■ We hold this case does not come within the category of an "exceptional" case, *Wiley, supra*; Yates v. United States, 356 U.S. 363, 78 S.Ct. 766, 2 L.Ed.2d 837 (1958) or was a disparate sentence constituting "extraordinary circumstances" where appellate intervention and review may be proper. Simpson v. United States, *supra*; United States v. Rook, *supra*. Furthermore, the maximum allowable sentence was not imposed which could cause appellate courts to consider an abuse of discretion, Lacaze v. United States, 391 F.2d 516 (5 Cir., 1968). We do not feel that the sentence was "excessive and out of proportion to the offense" charged necessitating a remand for reconsideration of the sentence. United States v. McKinney, 427 F.2d 449 (6 Cir., 1970). Finally, this case is not within the "ex-

**246**

ceptional" category that may call for the exercise of the appellate supervisory control. United States v. Melendez, 355 F.2d 914, 917 (7 Cir., 1966)

■ With reference to appellant's final issue on appeal, we hold the sentence imposed is not excessive or violative of the Eighth Amendment prohibition of cruel and unusual punishments.

The judgment of conviction herein is Affirmed.