**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William R. MING, Jr., Defendant-
Appellant.**

**No. 71–1083.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1972.

Decided May 26, 1972.

Rehearing Denied June 26, 1972.

Certiorari Denied Oct. 16, 1972.
See 93 S.Ct. 235.

R. Eugene Pincham, Ellis E. Reid, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., John Peter Lulinski, Jeffrey Cole, Sheldon Davidson, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Stanley A. Kaplan, Maurice Rosenfield, Alex Elson, Harry Kalven, Jr., Chicago, Ill., amici curiae.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and KILEY, Circuit Judge.

HASTINGS, Senior Circuit Judge.

Defendant William R. Ming, Jr., was charged in four counts of an information, filed April 14, 1970, with having willfully and knowingly failed to make his federal income tax returns for the years 1963, 1964, 1965 and 1966 to the District Director of Internal Revenue,[1]

---

1. Count I is typical of the four counts and reads:

"The UNITED STATES ATTORNEY charges:

"That during the calendar year 1963,

"WILLIAM R. MING, JR.,

defendant herein, who was a resident of the City of Chicago, State of Illinois, had and received a gross income of $17,908.81, that by reason of such income he was required by law, after the close of the calendar year 1963 and on or before April 15, 1964, to make an income tax return to the District Director of Internal Revenue for the Internal Revenue District of Chicago at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, stating specifically the items of his gross income and any deductions and credits to which he was entitled; that well knowing all of the foregoing facts, he did wilfully and knowingly fail to make said income tax return to said Director of Internal Revenue, or to any other proper officer of the United States, in

in violation of Title 26 U.S.C.A. § 7203, being Section 7203 of the Internal Revenue Code of 1954.[2]

Following the disposition of the pretrial motions, this cause was submitted for trial to a jury in the federal district court[3] on October 26, 1970. The jury returned a verdict on November 2, 1970, finding the defendant guilty on each of the four counts as charged in the information. Judgment was entered on the verdict. Following the denial of defendant's post-trial motions in arrest of judgment and for a new trial, defendant was sentenced to serve four months imprisonment on each of the four counts of the information, the sentences to run consecutively, for a total of 16 months. Defendant was also fined in the sum of $1,250 on each of the four counts, for a total of $5,000, together with the costs of prosecution. Defendant appealed. We affirm.

The basic facts in this case are not in dispute. Defendant did not timely file his federal income tax returns for each of the four years, 1963 through 1966. Defendant did not make such returns when due, that is, on or before April 15 of the year succeeding the calendar tax year involved. Defendant was a person required by law or regulation to make a return for each of the four years in question, his adjusted gross income having exceeded $600 for each of those years. Defendant knew that he was required to make such returns on or before the respective due dates. For the purpose of establishing a pattern of conduct bearing upon the question of willfulness, over objection, the Government established that the defendant failed to timely make his federal income tax returns for the seven preceding tax years of 1956 through 1962.

Testimony introduced by defendant, including his own, was directed to the one issue of whether he had any criminal intent in failing to make his returns when due, i. e., whether he willfully and knowingly failed to do so. We shall subsequently treat the several issues raised concerning such testimony, as well as that excluded by the trial court in its evidentiary rulings.

It should be further pointed out at this juncture that defendant was charged under Section 7203, a misdemeanor statute. He was not charged under Section 7201 with willfully attempting to evade or defeat his federal income tax, a felony statute.

### THE INFORMATION

▇ Defendant contends the district court prejudicially erred in denying his motion in arrest of judgment. He argues that the information is fatally defective because it does not state that he failed to make said income tax return "at the time or times required by law or regulations," the language of the statute. He says that the words used in the information, "said income tax return," do not refer to "the breach of the duty

---

violation of Section 7203, Internal Revenue Code, Title 26, United States Code, Section 7203."

Count II alleges defendant received a gross income of $28,039.07 in 1964; Count III alleges $29,279.01 in 1965; and Count IV alleges $23,697.36 in 1966.

2. Section 7203 reads:

"Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof *to make a return* (other than a return required under authority of section 6015 or section 6016), keep any records, or supply any information, who willfully fails to pay such es- timated tax or tax, *make such return,* keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution." August 16, 1954, c. 736, 68A Stat. 851. (Emphasis added.)

3. Trial was had in the United States District Court for the Northern District of Illinois, Eastern Division, the Honorable Julius J. Hoffman, Judge, presiding.

to file at the time required by law." We regard this as an unrealistic reading of the information.

Count I in the information does allege that defendant "was required by law * * * on or before April 15, 1964, to make an income tax return * * * [and that] he did wilfully and knowingly fail to make *said income tax return* * * *." (Emphasis added.) We are at a loss to understand how anyone reading the information could fail to understand that "said income tax return" required by law to be made on or before the specified due date could be other than a return to be made at the time required by law.

We are not persuaded by defendant's attack on this information. We find ourselves in agreement with the holding in United States v. Cotter, 1 Cir., 425 F.2d 450 (1970). In *Cotter*, in considering the language used in an indictment charging a violation of Section 7203 for failure to make a return as "required by law" following the close of the calendar year 1962, the court said: "The fair meaning of 'said income tax return' is the return due on April 15, 1963." At 452.

## MOTION FOR SUBSTITUTION OF JUDGES

On the morning of the trial, defendant filed a motion for substitution of judges pursuant to Title 28, U.S.C.A. § 144. Defendant moved that Judge Hoffman proceed no further because he had "a personal bias and prejudice in favor of plaintiffs, which personal bias and prejudice was not known to defendant until on or about October 23, 1970." The motion was accompanied by defendant's supporting affidavit and a certificate of good faith by his counsel. Disregarding the question of timeliness or lack of it, Judge Hoffman considered the motion on its merits and denied it on the ground that "[t]he motion supported by an affidavit is entirely inadequate and does not meet the requirements of the statute."

Section 144 dictates disqualification only when "the judge * * * has a personal bias or prejudice either against him [the movant] or in favor of any adverse party * * *." Our examination of the affidavit reveals in substance that defendant alleged that Judge Hoffman had a personal bias or prejudice in favor of the United States of America based on the following cited examples of his judicial conduct:

(1) Judge Hoffman refused to grant defendant a continuance in the instant case so that defendant could participate in the appeal of an election case involving the Board of Election Commissioners of the City of Chicago, entitled United States of America v. Kusper, et al., *then pending in this court*; and

(2) Judge Hoffman, on November 30, 1966, in defendant's presence, in the case of United States v. White, a narcotics case where a defendant had accused United States Treasury agents of perjury, had characterized the agents as "brave young Treasury agents."

We take judicial notice of the proceedings on appeal in this court in the *Kusper* case and find no substance there to support the charge of bias and prejudice on the part of Judge Hoffman in favor of the United States. The denial of a simple continuance hardly rises to the dignity of giving "fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." Berger v. United States, 255 U. S. 22, 33–34, 41 S.Ct. 230, 233, 65 L.Ed. 481 (1921). *See* Rosen v. Sugarman, 2 Cir., 357 F.2d 794, 797–798 (1966); Tucker v. Kerner, 7 Cir., 186 F.2d 79, 83–85 (1950). *Cf*. Peacock Records, Inc. v. Checker Records, Inc., 7 Cir., 430 F.2d 85, 88 (1970), cert. denied, 401 U.S. 975, 91 S.Ct. 1193, 28 L.Ed.2d 324 (1971).

To the credit of defendant, we note one of his concluding statements in his supporting affidavit: "Affiant has known Judge Julius J. Hoffman for many years and has a high regard for him and as a result of comments made

by the judge on occasion, believes the high personal regard to be mutual."

 It was the judge's duty to inquire into the *legal sufficiency* of the facts stated in the affidavit. A trial judge has as much obligation not to recuse himself when there is no occasion for him to do so as there is for him to do so when the converse prevails. Rosen v. Sugarman, 357 F.2d at 797. We conclude that defendant's supporting affidavit to his motion for substitution of judges was inadequate and does not meet the requirements of Section 144. It was not error to deny the motion.

### VALIDITY OF SECTION 7203

Defendant contends that Section 7203 "contains vague language and myriad cross references to interrelated enactments and regulations and, as a consequence, is void because it does not meet the standard of clarity required of penal statutes by the Fifth Amendment to the Constitution."

He buttresses his contention by resorting to the well established principle "that a law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law." Baggett v. Bullitt, 377 U.S. 360, at 367, 84 S.Ct. 1316, at 1320, 12 L.Ed.2d 377 (1964). No one disputes the vitality of this constitutional pronouncement made in holding invalid two state statutes requiring state employees to subscribe to "non-subversive" oaths as a prior condition for public employment. It simply has no application to our consideration of the validity of Section 7203, either on its face or as applied.

 Defendant's argument is predicated on the assumption that the meaning of "willfully fails * * * to make such return" in Section 7203 is to be equated with the meaning of "willful" in Section 7201, the felony statute. However, by comparison, Section 7201 refers to one "who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment there-

of." The felony statute requires the affirmative act of evasion, while the misdemeanor is an omission of a duty to make a return. This distinction was clearly recognized by the Supreme Court in Sansone v. United States, 380 U.S. 343, 350–354, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); Spies v. United States, 317 U.S. 492, 497–500, 63 S.Ct. 364, 87 L.Ed. 418 (1943); and United States v. Murdock, 290 U.S. 389, 396, 54 S.Ct. 223, 78 L.Ed. 381 (1933). Following *Sansone* and *Spies* is United States v. Schipani, 2 Cir., 362 F.2d 825, 831 (1966), cert. denied, 385 U.S. 934, 87 S.Ct. 293, 17 L.Ed. 2d 214; and following *Sansone* is United States v. Fahey, 9 Cir., 411 F.2d 1213, 1214 (1969), cert. denied, 396 U.S. 957, 90 S.Ct. 430, 24 L.Ed.2d 422.

All of these cases were correlated and cited with approval by our court in United States v. Matosky, 7 Cir., 421 F. 2d 410, 411–413 (1970), cert. denied, 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62. There the defendant was convicted of a charge of failure to file timely income tax returns for the years 1962, 1963 and 1964, in violation of Section 7203, and the only issue for trial by the jury was that of willfulness. We noted there that defendant's argument "that the test of 'willfulness' is the same under § 7203, as it is under § 7201" had been rejected in *Sansone*.

 We conclude that Section 7203 is constitutional on its face. In support of defendant's contention that the statute was unconstitutionally applied to himself, he argues that the trial court erred in excluding his proffered testimony of Dr. Lawrence Freedman, a psychiatrist. This witness was asked a series of hypothetical questions by which the defendant offered to prove that his failure to make his tax returns was at least partially caused by emotional pressures and a lack of mental capacity referred to as "anti-materialistic neurosis." Defendant makes no plea of insanity. Since we hold that the meaning of willfulness is as set out in the foregoing authorities, it necessarily follows that the statute was constitutionally applied to defendant

and the trial court did not err in sustaining the Government's objections to the introduction of such testimony.

## CHALLENGED EVIDENTIARY RULINGS

The trial court sustained the Government's objections to a variety of questions asked by defendant's counsel both on direct and cross-examination. The record is replete with succeeding offers to prove. Further, defendant's counsel complains of the trial court's adverse rulings in certain aspects of his examination of Government witnesses. We have read the entire record pertaining to these evidentiary rulings and have noted the parade of the jury in and out of the courtroom as required in such instances.

For the most part, defendant's motions in these respects do not merit detailed consideration. The trial court ruled properly when questions were obviously improper as to form; when the evidence sought was irrelevant or immaterial; and particularly so when the answers sought were not proper under the rule relating to the issue of willfulness as we have determined it to be in this case.

A few instances will suffice. There was *no dispute* that defendant's income tax returns were *unseasonably filed* and his income taxes were paid *when past due*. Defendant contends the trial court erred in refusing to allow admission in evidence of his federal income tax returns for the years 1962 through 1968, inclusive, and the work copies of those returns. The trial court denied the introduction of a Xerox copy of an Illinois death certificate with respect to the death of Arthur J. Wilson, formerly defendant's accountant, who had been employed at some time to work on defendant's tax returns but had never completed them. Wilson's death was not disputed. Defendant unsuccessfully sought to introduce a series of long-hand yellow worksheets purporting to be legal matters in which he had been professionally engaged during the years 1958 through 1970, apparently to establish that he had

a busy and demanding law practice. The testimony of various witnesses was excluded where defendant attempted to show that he was more concerned with people than with making money; the detailed manner in which his secretary took care of his personal financial matters; conversations between defendant and his accountant (following Wilson's death) concerning his tax returns which this accountant eventually prepared and were executed and filed by defendant; and numerous other irrelevant personal matters.

■ It has been clearly established that late filing and late tax payment are immaterial on the issue of willfulness in a Section 7203 prosecution. In *Sansone, supra,* the Court said: "[W]e agree that the intent to report the income and pay the tax sometime in the future does not vitiate the willfulness required by §§ 7203 and 7207 * * *." 380 U.S. at 354, 85 S.Ct. at 1011. In *Spies, supra,* the Court said: "Punctuality is important to the fiscal system, and these are sanctions [referring to willful failure to make a return] to assure punctual as well as faithful performance of these duties." 317 U.S. at 496, 63 S.Ct. at 367. See *Fahey,* 411 F.2d at 1214; and *Matosky,* 421 F.2d at 413.

It is also obvious that the proffered testimony excluded by such rulings could not serve to impeach a Government clerk who had merely testified that her search in 1968 of Internal Revenue index files did not reveal that defendant's tax returns had been filed. Accountant Wilson's death was well known to the jury because of defendant counsel's repeated references to it during the trial. Defendant's widespread, busy, private and civil rights-related law practice, together with his distinguished record of public service in a broad range of activities, were fully disclosed to the jury in defendant's personal testimony in his own defense. He was granted wide latitude in such testimony.

Based upon our detailed examination of the entire record relating to all of the challenges of defendant to evidentiary

matters, we have concluded that the trial court did not prejudicially err in such rulings and that there are no adequate grounds for a reversal resulting from the same.

## MISCELLANY

A few of defendant's claims of prejudicial error merit only passing comment.

██ ██ He charges the method of selecting the jury was improper, citing Rule 24(b), Federal Rules of Criminal Procedure, 18 U.S.C.A.[4] He now asserts that the trial court erred in limiting each side to three peremptory challenges because the defendant's total punishment could and did exceed one year. The short answer to this is that defendant was charged in one information with four counts of the same offense, a misdemeanor, for which the statutory penalty is not more than one year or a fine or both. He cites no supporting authority. The rule is to the contrary and the trial court properly granted only three peremptory challenges to each side. More than one count properly joined in one indictment or information does not increase the number of peremptory challenges to which a defendant is entitled. It is foreclosed by the statute itself. Nestlerode v. United States, 74 App.D.C. 276, 122 F.2d 56, 58–59 (1941).

██ Defendant further asserts, without supporting authority, that he was denied due process under the Fifth Amendment because the Government used two of its peremptory challenges against the only two Negroes in the *jury box*. There was no showing or claim of the systematic exclusion of Negroes from federal juries in the Northern District of Illinois based on an invidious discrimination. The race of the veniremen excused by counsel does not appear in the record. Assuming that the two jurors in question were Negroes, there has never been any suggestion that the prosecution was racially biased or the trial so corrupted. The Government aptly points to the record showing that when the trial judge made his ruling the defense counsel stated in open court: "I think it can be read fairly both ways. We will abide by your Honor's ruling." Defendant later used this ruling as one of his grounds in a motion for a new trial. The trial court did not err in its ruling. *See* Swain v. Alabama, 380 U.S. 202, 221, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

---

Defendant charges that he was denied a fair trial due to the trial court's charge to the jury. He asserts the court erred in rejecting his tendered instructions Nos. 6 and 14, and in giving Government's tendered instructions Nos. 3A, 3B, 4, 5, 5A, E, F, Q and T–1. We have reviewed each of such instructions and the instructions given as a whole. Government's instruction No. T was substituted for defendant's No. 6, and is a better and more complete instruction on the subject of defendant's good reputation, subsequently more fully referred to herein. His tendered instruction No. 14 on the subject of his mental condition was properly rejected as going beyond that warranted in a prior holding of this court. Those given by the court have been approved in form or substance by our court or other federal courts. It would unduly prolong this opinion to treat each one in detail. We find no error concerning any of those challenged. Based on our examination of such instructions given as a whole, we are left with the fixed conclusion that the jury was adequately and properly instructed in all respects and that defendant was not deprived of a fair trial as a result thereof. In fact, as we read the instruc-

---

4. Rule 24(b), in relevant part, reads:

"(b) Peremptory Challenges. * * * If the offense charged is punishable by imprisonment for more than one year, the government is entitled to 6 peremptory challenges and the defendant or defend-ants jointly to 10 peremptory challenges. If the offense charged is punishable by imprisonment for not more than one year or by fine or both, each side is entitled to 3 peremptory challenges."

tions as a whole we find they appear to be more favorable to the defendant than to the Government.

---

■ Defendant presented a number of eminent and distinguished persons who testified that on April 15, 1970, the date the instant information was filed, his general reputation for truth and honesty in the community wherein he worked was good. All of such witnesses had had a personal relationship with defendant in the past, either socially or professionally. These witnesses were Mahalia Jackson, gospel singer; Edward Levi, President of the University of Chicago; Ramsey Clark, former Attorney General of the United States; Monsignor John Egan, clergyman and then associated with the University of Notre Dame; Roy Wilkins, Executive Director of the National Association for the Advancement of Colored People; Martin Luther King, Sr., minister of the Ebeneezer Baptist Church, Atlanta, Georgia; R. Jess Brown, educator and Mississippi lawyer; Dominic A. Tesauro, Chicago lawyer and former Regional Administrator of General Services Administration; and Dr. Stanley Korff, Chicago dentist.

On the subject of evidence of defendant's reputation the trial court instructed the jury as follows:

"The defendant, you recall, had introduced evidence tending to establish his good reputation in his community prior to the indictment in this case. Such evidence may indicate to you that it is improbable that a person of good character would commit the crime or crimes charged. Therefore the jury should consider this evidence along with all the other evidence in the case in determining the guilt or innocence of the defendant. The circumstances may be such that evidence of good character alone may create a reasonable doubt of the defendant's guilt, although without it the other evidence would be convincing. However, evidence of good reputation should not constitute an excuse to acquit the defendant if the jury, after weighing all evidence, including the evidence of good character, is convinced beyond a reasonable doubt that the defendant is guilty of the crime or crimes charged in the information."

We consider this instruction to be a proper and adequate statement of the applicable law. We must conclude that the jury considered this evidence, along with all the other evidence in the case, in determining that defendant was guilty as charged.

---

Defendant timely filed a pre-trial motion requesting the trial court to suppress from evidence his federal income tax returns filed for the years 1963 through 1966 and to suppress from evidence the testimony of Internal Revenue Agents derived from audits of defendant's records, obtained during conversations with defendant or statements made by defendant to the agents.

■ The argument against the use of the tax returns is that such use would be in violation of his Fifth Amendment privilege against self-incrimination. He predicates this argument on the premise that mere failure to make a return must be equated with an attempt to evade or defeat the tax. We have already rejected this premise in considering the validity of Section 7203, *supra*. To our knowledge no court has held the self-incrimination privilege to be a good defense to a Section 7203 charge of willful failure to make a return. The indication seems to be to the contrary.

The Supreme Court has held in effect that the Fifth Amendment does not protect the recipient of such income from prosecution for willful refusal to make any return under the income tax law. United States v. Sullivan, 274 U.S. 259, 263, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). In United States v. Keig, 7 Cir., 334 F. 2d 823, 827 (1964), a prosecution under Section 7203 for willful failure to make income tax returns, we laid down the

same rule, citing *Sullivan.* The argument that the use of such returns as evidence of his obligation to file or as evidence of his gross income would violate his right to due process is similarly untenable.

■ Defendant raises the same Fifth Amendment contentions with reference to the admission of the testimony of the Internal Revenue Agents above mentioned. He appears to rely upon the alleged failure of the agents to give him the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He claims this is the logical extension of our holding in United States v. Dickerson, 7 Cir., 413 F.2d 1111 (1969), and that we should re-examine our decision "to apply our holding to interrogations taking place after the date of the decision [July 28, 1969]." Since the interrogations in the case at bar took place *before* our decision in *Dickerson,* he is not entitled to its application here. United States v. Gallagher, 7 Cir., 430 F.2d 1222, 1224 (1970), cert. denied, 400 U.S. 956, 91 S. Ct. 353, 27 L.Ed.2d 264. It is reported that almost all other circuits have rejected our *Dickerson* application of the exclusionary rule in *Miranda* to taxpayers in criminal tax investigations.[5] We see no need to re-examine our limited prospective application of *Dickerson.*

We hold that the trial court did not err in denying defendant's motion to suppress.

### BRIEF OF AMICI CURIAE

We granted leave to a group of nine "concerned members" of the bar of this court to file a brief as amici curiae in support of defendant-appellant. We have carefully considered this brief. The members of the group are all eminent lawyers and legal scholars. With commendable candor they admit they "interested themselves in this case because of their regard for and concern about a distinguished colleague at the bar whose long career demonstrates courage, compassion, professionalism and commitment to *pro bono publico* work in the highest traditions of the bar." In this respect they acknowledge kinship to the "eminent witnesses testifying to his character, reputation and the nature of his professional work," we have hereinbefore referred to. In addition to their personal concern for defendant, they find "a basic and disturbing confusion" underlying the meaning of "willfully," the key term for the requisite state of mind as it is used in Section 7203, the misdemeanor statute. They further suggest that the Seventh Circuit appears not firmly committed to a construction of the term "willfully" in the misdemeanor statute, Section 7203, different from that used in the felony statute, Section 7201, which requires "a state of mind approaching an intent to evade taxes."

We have rejected this contention in our discussion of the validity of Section 7203. With deference to the distinguished *amici,* we reiterate that our holding in *Matosky,* 421 F.2d at 413 following *Sansone, Spies, Schipani* and *Fahey, supra,* is fully dispositive of this question in this circuit. Further, we see no "sharp split between the Circuits as to how to handle 'willfully' " in the misdemeanor statute.

*Amici,* relying upon their statement that defendant's "returns were in and his taxes for the years charged were paid well prior to the time the prosecution was initiated," find that this led the trial court into fatal error. We have already passed upon the court's exclusion of the returns themselves for the years involved and evidence that the taxes were paid before the prosecution was initiated. However, further error is asserted because the trial court admitted in evidence, over objection, evidence that defendant had not timely filed his returns in the seven successive years immediately preceding the years charged,

5. Merten's Law of Federal Income Taxation, § 55A. 21, Note 13.26, 1972 Cumulative Supplement, Vol. 10, page 18.

these being barred from prosecution by the statute of limitations.

 It is well established in this circuit that evidence of other related offenses is clearly admissible to prove knowledge and intent of a person accused of a crime. Here, the other offenses involved were *identical* to those charged. There was no hiatus between the preceding seven years and the four charged. The conduct of the seven immediately preceding years was relevant to the issue of knowledge and intent as tending to show a constant pattern of conduct. This is the recent explicit holding of our court, authored by Senior Circuit Judge Duffy, in United States v. Hampton, 7 Cir., 457 F.2d 299 (1972). United States v. Marine, 7 Cir., 413 F.2d 214 (1969), and other relevant cases in this and other circuits as cited in *Hampton*, with comment. Suggested contrary inferences in other circuits by the *amici* are readily distinguishable from the case at bar.

*Amici* further suggest an inability to understand what it is that moves men to fail to file income tax returns; they are astonished by the disproportionate number of misdemeanor cases which involve lawyers; and have noted the uneven sentences given in a number of such cases. We do not profess to have the answers to such questions. We do know from defendant's own testimony that he did not timely make his required tax returns; that he knew he was required to do so; and that he knew he had not complied with such legal obligation. He had no "bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained," as required in *Matosky, supra.*

Misdemeanor convictions under Section 7203 are not unique insofar as eminent scholars and distinguished members of the bar are concerned. They are well known to all who have had to deal with them. With his outstanding record of

service, both public and private, defendant was one of a select group who attracts the immediate sympathetic support of his peers who feel impelled to rescue him from the belated predicament in which he finds himself. This always leads to the willingness of friends of the highest standing to testify truthfully that he was a man of good reputation when he got into trouble. This, in turn, subjects a trial court and jury to great pressures, as it is properly intended to do. On conviction, as in the case before us, not infrequently similar pressures are brought to bear by lawyers who are genuinely concerned with the fate suffered by their colleague. However, on consideration of all issues presented, we cannot in good conscience hold that defendant did not receive a fair trial. In our judgment, he did.

Lurking in all appeals of this character is the inference that the trial court imposed an excessive punishment. The statutory maximum is one year's imprisonment and a fine of $10,000 on each count. The sentence imposed was four months and a fine of $1,250 on each count, the sentences to run consecutively. The sentences were one-third and the fines one-eighth of the maximum, well within the statutory limits. Whether the sentences should have been made to run concurrently or probation granted in whole or in in part, is beyond our jurisdiction. Such questions lie within the reasonable discretion of the trial court. Whether or not we would have assessed such penalties is beside the point and we express no opinion on that question. The case does not come within any of the categories of "exceptional cases" concerning excessive punishment as delineated in United States v. Humphreys, 7 Cir., 457 F.2d 242, at 245 (1972), with which opinion we are in agreement.

Without further extending this opinion, we hold that the judgment of conviction and sentence appealed from are in all things affirmed.

Affirmed.