**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roger S. BASKES, Defendant-Appellant.**

**No. 80–2825.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1981.

Decided Nov. 4, 1981.*

---

* The Honorable John D. Holschuh, U.S. District Judge for the Southern District of Ohio, sitting by designation.

* This opinion was released as an unpublished order on November 4, 1981, but is republished as a citable opinion on the panel's own motion. The petition for rehearing was denied on December 22, 1981.

Harvey M. Silets, Silets & Martin, Theodore A. Sinars, Harris, Burman, Sinars and Jiganti, Chicago, Ill., for defendant-appellant.

James R. Ferguson, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Judge, and BAUER, Circuit Judge.

PER CURIAM.

Roger S. Baskes was found guilty, after a three week jury trial, of conspiring to defraud the government in violation of 18 U.S.C. § 371 and of aiding and abetting in the preparation of false income tax returns in violation of 26 U.S.C. § 7206(2). He appeals. For the reasons stated in this opinion, we affirm.

The conspiracy involved a fraudulent scheme to assist two taxpayers in deferring their tax liability on a seven million dollar capital gain they had realized in 1973. A tax plan was devised to funnel the taxable gain to foreign trusts by means of prearranged commodities transactions. Baskes, along with several others, arranged to have a Japanese businessman establish foreign trusts which designated the taxpayers as beneficiaries. The Japanese businessman funded the trusts with his own money but was subsequently reimbursed. Commodities trades in currency futures were then executed on behalf of the taxpayers for the sole purpose of generating losses in this country while, at the same time, corresponding trades were executed on behalf of the foreign trusts to produce gains equal to the losses.

The thrust of Baskes' appeal is that the evidence, at most, supports a finding of civil violation of the tax laws but is insufficient to establish criminal intent. Specifically, Baskes challenges the sufficiency of the evidence with respect to several factual questions. First, he asserts that the evidence failed to establish that he was a member of any conspiracy or that he knew the trades had been prearranged and that the Japanese grantor had been reimbursed. Next, he claims that even if he knew that the transactions were prearranged or that the grantor had not created the trusts at his own expense, he still could have reasonably believed the losses were deductible. Baskes also maintains that he was convicted primarily on the basis of inadmissible hearsay. Finally, he argues that the trial judge was prejudiced and should have recused himself. Careful study of the record reveals that none of these contentions has merit.

I

It is axiomatic that in reviewing a criminal conviction this court must evaluate the evidence in the light most favorable to the prosecution, deferring to the jury's weighing of the evidence and credibility determinations. *United States v. Niemiec*, 611 F.2d 1207 (7th Cir. 1980). The evidence and reasonable inferences drawn from that evidence must establish guilt beyond a reasonable doubt. Once the conspiracy is established, only slight additional evidence is required to support a finding of an individual's connection with that conspiracy. *United States v. Harris*, 542 F.2d 1283 (7th Cir. 1976).

Baskes argues that in applying these well settled rules this Circuit has, in actuality,

required more than slight additional evidence to connect an individual with the conspiracy. Relying on *United States v. Allen*, 596 F.2d 227 (7th Cir. 1979), *United States v. McPartlin*, 595 F.2d 1321 (7th Cir. 1979), *United States v. D'Andrea*, 585 F.2d 1351 (7th Cir. 1978), and *United States v. Allied Asphalt and Paving Co.*, 451 F.Supp. 804 (N.D.Ill.1978), Baskes claims that there must be substantial evidence of his involvement to uphold his conviction.

It is difficult to understand how Baskes reads these cases to require more than slight additional evidence. In *Allen*, the court merely found that there was substantial evidence supporting defendant's conviction as a co-conspirator; the court did not, however, adopt substantial evidence as a new standard for establishing participation in a conspiracy. *United States v. Allen*, 596 F.2d 227, 229 (7th Cir. 1979). Similarly, in *McPartlin* this court found that there was overwhelming evidence to show the existence of a conspiracy and sufficient independent evidence, other than co-conspirators' statements, to connect the defendant with the conspiracy. However, it stated that by its very nature a conspiracy is subject to proof by circumstantial evidence and reaffirmed the rule that "once the existence of a common scheme is established, very little may be required to show beyond a reasonable doubt that a particular defendant became a party." *United States v. McPartlin*, 595 F.2d 1321, 1359 (7th Cir. 1979). Clearly neither *Allen* nor *McPartlin* requires substantial evidence.

Baskes also misreads *D'Andrea* and *Allied Asphalt Paving Co.* Although in both of those cases the evidence was held insufficient to support a conviction for conspiracy to defraud the government, neither case is analogous to the situation here. *D'Andrea* concerned a conspiracy to defraud the United States in connection with a federally insured housing project. On appeal this court reversed the architect's conviction as a co-conspirator because the evidence did not establish the requisite criminal intent. There the architect had falsely certified to the Federal Housing Authority that he had been paid a $30,039 architect's fee when he

had received only a portion of that fee. However, all parties knew that the form had been prepared in advance of payment so the architect's fee could be paid at the initial closing. Thus, since the architect was not present at the initial closing and received payment only for the work he had actually done, this court concluded that the false statement, the only evidence linking the architect to the fraudulent scheme, did not justify an inference of criminal intent because the architect had no way of knowing that the remaining money was paid to unauthorized parties.

In *Allied Asphalt Paving* the court found the evidence insufficient to support the jury's determination that defendants were guilty of conspiring to violate the Sherman Act, 15 U.S.C. § 1, and the mail fraud statute, 18 U.S.C. § 1341. It found that the defendant's ordinary business contacts with the conspirators, consisting of a telephone call, and some meetings during which ordinary business decisions typically made in the trade were discussed, did not indicate that he was aware of the fraudulent plan. Since the individual defendant, the senior vice-president in charge of sales of the corporate defendant, did not know of the scheme, the corporation could not be charged with such knowledge. Without knowledge of the scheme, there was no criminal intent, and for this reason, defendants' motion for acquittal was granted.

■ In contrast, here there are numerous overt acts from which the jury might reasonably infer that Baskes was a party to an illegal tax fraud scheme. It is undisputed, for example, that Baskes was present at the meeting at which Goldstandt, a commodities futures trader, explained the mechanics of the tax plan. Goldstandt, an unindicted co-conspirator who testified under a grant of immunity, explained that he could insure that the trusts would consistently realize a gain while the taxpayers consistently suffered a loss by entering the trades at 12:00 using 9:00 prices. It is also undisputed that Baskes' own expert witness, a New York tax attorney, testified that he would have

been disturbed if he had known that the trade would be made at 12:00 using 9:00 prices. He stated that he would not have approved the plan without investigating further. Baskes was aware that Goldstandt declined to commit the plan to writing and that Arthur Andersen refused to sign the tax returns which reflected only the losses in the commodities trades but not the corresponding gains realized by the foreign trusts. Further, at a meeting held after the taxpayers had decided to go ahead with the plan, Baskes encouraged Goldstandt not to explain the details of how the plan would be effected.

Participation in a criminal conspiracy need not be proved by direct evidence but may be inferred from a "development and a collocation of circumstances," *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and even a single act can suffice to connect the defendant to the conspiracy if that act leads to the reasonable inference of intent to participate in an unlawful enterprise. *United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 127 (7th Cir. 1978). Thus, the fact that Baskes was fully aware that the commodities transactions were prearranged and the reasonable inference that Baskes must have realized that a foreign grantor is not likely to spend $50,000 to fund a trust for two men he had never met is sufficient evidence from which the jury could reasonably have concluded that Baskes knew of the illegal plan.

Baskes' argument that there is less evidence showing involvement in a conspir-

acy here than in *D'Andrea* or *Asphalt Paving Co.* is not persuasive. Baskes ignores the fact that proof that he was fully informed of all the details of the scheme is not required where, as here, there is a strong inference that he realized the tax deferral plan was illegal. *United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 127 (7th Cir. 1978). Baskes also ignores the fact that each case must be decided on its own facts and "[i]t is therefore possible for the circumstances of an individual defendant's participation in an established conspiracy to become substantial from their weight in position and context, though in abstraction they may be only slight," *United States v. Medina-Herrera*, 606 F.2d 770, 773 n.3 (7th Cir. 1979). Neither *D'Andrea* nor *Asphalt Paving Co.* compel reversal.

Baskes' argument that the evidence demonstrates that he could reasonably have believed the losses were deductible regardless of the prearrangement of trades and reimbursement of the grantor is irrelevant. The standard of review is whether the evidence and inferences when viewed in the light most favorable to the government can reasonably be said to support the jury's determination. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The fact that another jury might have decided differently does not compel reversal. *United States v. Winograd & Siegel*, 656 F.2d 279 (7th Cir. 1981). The evidence amply supports the jury's conclusion that the transactions were shams and that Baskes was well aware of their illegality.**

** Moreover, we do not agree that the evidence reasonably supports the inference that Baskes believed the scheme to be legal. Although Baskes compares the prearranged commodities trades to tax straddles, which were common tax deferral plans in 1973, there is a significant difference between the two transactions. With tax straddles, the taxpayer was clearly identified as being on both sides of the transaction, whereas with the prearranged commodities trades foreign trusts were used to camouflage this fact. Further, the record establishes that the prearranged trades were virtually risk free. Goldstandt testified that while technically the commodities trades appeared to be subject to

economic risks, such risks could be eliminated by tearing up the trading cards and failing to report the trades to the market clearing house or offsetting the positions by later reversing the transaction. On cross-examination Fox, Baskes' expert witness, corroborated Goldstandt's opinion that in actuality the trades were risk free. More importantly, Baskes' conviction need not be disturbed even if the transactions incorporated substantial risks, for the trades were not bona fide transactions in the competitive open market. *United States v. Winograd and Siegel*, 656 F.2d 279 (7th Cir. 1981).

## II

Baskes next challenges the admission of statements and opinions of two Arthur Andersen accountants. Although the trial judge admitted this testimony merely to show that these statements were made and specifically instructed the jury on the limited use of the testimony, Baskes argues that the statements were treated as substantial evidence by the government throughout the trial, particularly during its opening and closing statements.

We have carefully reviewed each of Baskes' claims with respect to the admission and use of these out-of-court statements and find it unnecessary to address each alleged error. We find that the statements were either proper or that any error was cured by a specific instruction. For example, Baskes maintains that in its opening statement the government "in no certain terms, previewed the substantive nature of the forthcoming Frost and Adams statements." Appellant's brief at 7. The portion of the opening statement to which Baskes refers stated:

> You will learn that the Arthur Andersen & Company accountants prepared the return and had it typed in final but because each of those returns were commodity losses, they refused to sign the return and instead returned it to Randy Agley and told him, "We won't sign this return because of the commodities losses which were listed on there."

> You will learn that Mr. Randy Agley turned to Mr. Baskes and informed him that Arthur Andersen won't sign the return. A copy of the return was forwarded to Mr. Baskes. He reviewed it.

Tr. at 20. We do not interpret the government's opening statement as previewing the substantive nature of the accountants' statements or that the statements were offered to show that the transactions were illegal.

On the other hand, we do agree that in the closing argument the government improperly invited the jury to consider the accountants' opinions as substantive evidence. Baskes, however, did not object to the remark. Only after the jury had been instructed and taken out did Baskes raise an objection. Then, even though the jury had already been instructed that the opinions of the accountants were received for limited purposes, the trial judge called the jury back and again instructed them on this matter.

Evaluation of the effect of an improper statement in the prosecutor's closing argument must be made in the context of the entire trial. *United States v. Falk*, 605 F.2d 1005 (7th Cir. 1979), *cert. denied*, 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980). *See also United States v. Gross*, 511 F.2d 910 (3d Cir. 1975). In view of the fact that (1) defense counsel failed to object at the time the statements were made; (2) the jury was continually cautioned about the limited use of this evidence; (3) the defense counsel also made substantive use of this evidence; and (4) the prejudice to Baskes, if any, is slight, the admission of the challenged evidence does not compel reversal.

## III

Finally, there is no merit to Baskes' contention that the trial judge was prejudiced and biased or that he should have granted the motion for recusal. A motion for recusal should not be granted lightly; a judge is under as much obligation not to recuse himself when facts do not show prejudice as he is to recuse himself if they do. *United States v. Ming*, 466 F.2d 1000 (7th Cir.), *cert. denied*, 409 U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 176 (1972). Since a judge is presumed impartial, the party seeking recusal has a substantial burden to overcome the presumption with factual allegations of personal bias stemming from extra judicial source. *See Hepperle v. Johnston*, 590 F.2d 609 (5th Cir. 1979); *Wolfson v. Palmieri*, 396 F.2d 121 (2d Cir. 1968). The proper standard for determining if the motion should be granted is whether the facts of the affidavit, which, for the purposes of the motion, are assumed to be true, would convince a reasonable person that bias and prejudice exist. *United States v. Dansker*, 537 F.2d 40 (2d Cir. 1976), *cert.*

*denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

The affidavit in support of the motion for recusal stated that the affiant was a lawyer who had had a conversation with the trial judge about tax shelters during which the judge indicated disapproval of these plans. The affidavit also stated that during a later conversation during Baskes' trial, the judge referred to the case as one involving a tax evasion scheme. Disqualification was clearly not warranted on the basis of this affidavit for it was legally deficient in that there was no allegation that the alleged bias arose from an extrajudicial source. Indeed, the affidavit concedes that the language attributed to the judge may have been a mere description of the indictment. We also note that the record reveals that throughout the trial the judge conducted himself with impunity, even suppressing much of the evidence against Baskes until this court reversed the ruling. *United States v. Baskes*, 640 F.2d 48 (7th Cir. 1980). There is no evidence of bias; denial of the motion for recusal was proper.

Accordingly, the judgment of the district court is

AFFIRMED.