## Commonwealth v. Rendick

*James P. Epstein and Lorinda L. Hinch, district attorneys*, for the commonwealth.

*Raymond H. Bogaty and Veronica R. Anzalone,* for defendants.

FORNELLI, *J.*, November 18, 1987—Defendant by a prior motion has asserted that he is incompe-

tent to stand trial on the pending criminal charges of homicide, two counts of attempted murder and two counts of aggravated assault. A public hearing was held on August 19, 1987, at which time a psychiatrist hired by defendant testified on direct examination to the conclusion that defendant was incompetent to stand trial. However, after repeated attempts by the district attorney to cross examine the doctor on the factual basis for his conclusions, the hearing was continued by the court. This was to permit the psychiatrist to review his notes so as to be better able to respond and be prepared to define the factual basis of his conclusions.

In the interim the court on August 20, 1987, over the objection of defense attorneys, ordered the defendant to Warren State Hospital. The order compelled an independent psychiatric examination to assist in the determination of defendant's competency to stand trial with a report thereon to be made to the court, all pursuant to section 7402(d) of the Mental Health Procedures Act, 50 P.S. §7402(d).

After this examination, the report was submitted to the court. Upon receipt, the results of the examination were publicly released without comment by the court on October 29, 1987, except to state that a continued hearing as to defendant's competency would be scheduled.[1]

Defense attorneys have now moved for recusal of the trial court, because of the release of the results of the court-ordered examination. Defendant's motion rests upon a belief that the court's report was confidential. This belief is wrong and rests upon a

---

1. The entire report was not released. Only the conclusions of the examination were made public. Neither the underlying basis nor the nature or results of the specific tests performed were released.

misunderstanding of the law and a misunderstanding of the nature of the examination ordered. The misunderstanding of the law lies in defense counsel's belief that an examination by court order for use in a public competency hearing is confidential and not subject to the public's access.

However, the very purpose of the court-ordered examination and report is for use in the competency hearing and competency determination which must be done publicly.[2] A secret report of secret proceeding which would determine defendant's mental competency to stand trial would be contrary to due process and would violate their own client's rights. Even if the results of the examination were secret and confidential, which they are not, it does not follow that the trial court by determining it not to be confidential must, therefore, recuse itself. An inaccurate ruling is not a basis for recusal and this determination as to lack of confidentiality was not inaccurate.

Defense attorneys' claim of confidentiality ignores both the law and the facts. The report of the examining court psychiatrist states plainly on page 1:

"I explained to him (Rendick) that this evaluation was requested by the court, that the information with which he provided me would be sent to the court, *and that the court could do what it pleases with this information.* (emphasis added).

Defense attorneys' confusion as to the law is seen from the fact that they rely upon section 4605(5) of

---

2. There is no doubt that had the court refused to make the results of the examination public that the press could have forced its disclosure. See *Zenith Radio Corporation v. Matsushita Electric Industrial Co., Ltd.,* 529 F. Supp. 866, 897 et seq. (E.D. Pa., 1981).

the Mental Health and Mental Retardation Act of 1966 (50 P.S. §4605(5)) as a statutory basis for their claim of confidentiality of the report. The attorneys are correct that under that act reports are not to be released "without authority."[3] This position, however fails to grasp that the court-ordered examination and report of their client was not under this act but under a different statute — The Mental Health Procedures Act of 1976. Section 7402(d) of that act specifically authorizes a court to order an independent competency examination and receive a report thereon.[4] See 50 P.S. §7402(d).

In addition to relying upon a statute unrelated to their client's examination, defense attorneys also rely upon a regulation unrelated to their client's examination, viz., 55 Pa.Code §5100.32 concerning the release of reports of treatment by mental health doctors and hospitals. This regulation is inapplicable. The release was by the court, not a doctor or hospital. Moreover, by its very title, the regulation covers only persons receiving treatment, not diagnostic examination. Defendant was court-ordered for an examination to determine competency to stand trial, not treatment. The fact that this regulation applies to treatment and not court-ordered examinations determining competency is further seen by regulation 5100.4, which defines the scope of the regulations as applying to all treatment of mentally ill persons.

The inapplicability of regulation 5100.32 is further seen in that it is applicable only to the doctors

3. Even if this act were applicable, the court is, of course, an authority which could authorize such release.

4. Defense counsel were clearly advised at the time the examination was ordered that it was being done so under this section of this act.

and hospitals which provide treatment services to a patient. It does not attempt to address in any way court-ordered examinations and diagnosis. Regulation 5100.31(b) sets forth the basis and scope of the confidentiality imposed by the regulations upon the providers of treatment. Its purpose is to develop and foster trust and confidence in the doctor-patient relationship. This obviously has no applicability to a court-ordered examination for the purpose of determining competency which has nothing to do with treatment or the physician-patient relationships created thereby.[5]

Thus, this regulation does not in any way purport to apply to the courts. In fact, a specific exception to the regulation's imposition of confidentiality upon doctors and hospitals is an exception allowing release of information to the court. See 55 Pa.Code §5100.32(6) and (7).

Moreover, no privilege between physician and patient applies in a criminal prosecution, especially one in which defendant has raised the issue of his own mental competency. *Commonwealth v. Petrino,* 332 Pa. Super. 13, 480 A.2d 1160, 1170 (1984), cert. denied 471 U.S. 1069 (1985). Independent court examinations for competency to stand trial do not affect the psychotherapist-patient privilege because they are solely diagnostic. See Knapp, VandeCreek, & Zirkel, *Privileged Communications for Psychotherapists in Pennsylvania,* 60 Temple Law Quarterly 267, 269-74 (1987).

There is, therefore, no basis in law or fact to support defense attorney's position that the examination results were confidential. In fact, the entire ex-

---

5. See *McCormick on Evidence,* §99 (E. Cleary 3d Ed. 1984).

amination, not just the conclusions, will be testified to in detail at the continued competency hearing, which has been pending, awaiting these results. It would be substantial unfairness to permit an accused to secure his own expert testimony as to his mental condition and then deny access to other information as to his mental condition obtained by independent examinations. *McCormick on Evidence,* §134 at 332 (E. Cleary 3d Ed. 1984).

Defense counsel also cites several judicial canons in support of their position that this court should be recused by reason of the release of the results of the examination. The assertion of these canons, however, again incorrectly assumes that the examination results are confidential. These canons are inapplicable not only because the examination results were not confidential, but also because for the canons to be applicable would require that the court have made a public comment upon those results. See Judicial Canon 3(A)(6) and 2(A).

It is not asserted by defense counsel, nor can it be asserted, that the court made a public comment on the examination results or did anything more than release the results of the examination. No comment was made on the conclusions or any indication given that the court accepted or rejected the results. Nor was there any comment or indication by the court as to how the court might rule on the ultimate issue of defendant's competency.

The only statement made by the court upon release of the results was that the report was distributed to all attorneys involved and that a continued hearing on the competency would be scheduled. This does not constitute public comment. The court's statement on the procedure to be followed now that the report had been received is in fact expressly permitted by canon 3(A)(6). Nothing in the

release of the report in any way reflected a pre-judgment of defendant's case on the issue of his competency. Similarly, canon 2(A) cited by defendant presupposes that results were confidential and a comment made thereon.

Even if the court had made public comment about the results, which it did not, that would not of itself be grounds for recusal. Under circumstances where there is public comment, recusal depends upon whether the content of those comments demonstrate a bias for or against a party, or reflect that the trial judge cannot remain fair and impartial through the remainder of the trial. *U.S. v. Haldeman,* 559 F.2d 31, 136 (D.C. Cir., 1976), cert. denied 97 S.Ct. 2641 (1977); *U.S. v. Board of School Commissioners of Indianapolis, Indiana,* 503 F.2d 68, 81 (1974), cert. denied 429 U.S. 1068, 97 S.Ct. 800, 801, 802 (1977). As stated in *Haldeman:*

"A judge's comment is disqualifying only if it connotes a fixed opinion — a closed mind on the merits of the case.", Id. at 136.

A trial court has as much obligation to not recuse itself when there is no reason to do so, as it does to recuse itself when the converse is true. *U.S. v. Bray,* 546 F.2d 851, 857 (10th Cir., 1976); *U.S. v. Baskes,* 687 F.2d 165, 170 (7th Cir., 1981).

It is important that the release of the examination's results be seen in context. During the several months prior to release of the results, the trial court had ruled on two requests by defendant that proceedings relating to defendant's mental condition be closed to the public. See Application for Pre-Arraignment Relief and Request to Seal Records of the Controller of Mercer County. On each request the court advised the defense attorneys and the district attorney that unless strictly prohibited all aspects of the case would be open to the public.

The trial court took this position not only by reason of the constitutional requirements of a public trial and the rights of a free press (See *U.S. v. Criden,* 675 F.2d 550, 556-57 (3rd Cir., 1982) ) but also by reason of the publicity of an unfortunate public comment by. one of the defense attorneys.[6] The trial court accordingly advised the attorneys, both defense and district attorney, that it was incumbent upon the court to be sure that the public not believe that "games" were being played. Everything involving the case would be open to the public unless clearly prohibited by law so as to assure the public's confidence in the judicial process by which the case is tried. See *U.S. v. Cianfrani,* 573 F.2d 835, 853 (3d Cir., 1978).

## ORDER

And now, November 18, 1987, the results of the examination not being confidential, and no public comment having been made on the results, and there being nothing incident to the release of the results which indicate bias, prejudice or pre-judgment concerning the issue of defendant's competency or defendant's case in general, defense attorneys' request for recusal on this basis is without merit and is refused. The following statement of the United States Supreme Court in *Ex Parte American Steel Barrell Company and Seeman,* 230 U.S. 35, 43, S.Ct. 1007, 1010 (1913) is relevant to

---

6. One of the defense attorneys was quoted in a local newspaper on July 25, 1987, as stating that the defense attorneys engage in "a game that we play" when the defense of a case depends upon the mental condition of defendant and in particular the manner of selection of psychiatrists as to defendant's condition. Defense attorney has asserted that the was misquoted and quoted out of context in that article.

the motion at hand:

"The basis of the disqualification (of a judge) is that 'personal bias or prejudice' exists, by reason of which a judge is unable to impartially exercise his functions in a particular case. It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice. It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, . . . neither was it intended to paralyze the action of a judge who has heard the case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard."

Defense counsel has also alleged that the trial court should excuse itself because of a claimed relationship to two potential trial witnesses, Mrs. Connie Rosati and Mrs. Stella Fragle, who are sisters. Defense attorneys do not assert, nor can they assert in fact, any relationship of the court by blood or marriage to Mrs. Connie Rosati other than she is the sister of Mrs. Stella Fragle.

They do correctly assert that Mrs. Stella Fragle is the godmother of the trial judge. This fact was made known by the court to defense attorneys at the very outset of the case at the first informal conference between the court and the attorneys on July 22, 1987. At that time, defense counsel and the district attorneys agreed, as did the court, that this was not a problem and only should be re-examined if the case were to be tried without a jury. Now, almost three months later defense counsel raises this as a basis for recusal.

The relationship of a godmother is not, of course,

a relationship by blood or marriage. It is the assumption of a religious obligation whereby the godmother agrees at the birth of a child to assure that the child receives education in his religion if the natural parents are unable or unwilling to do so.

This court has reviewed Mrs. Fragle's testimony at the preliminary hearing. She is a peripheral witness who does not provide any direct or circumstantial evidence against defendant.[7] She apparently was in another room of a Lawson's store when the victim, Cindy Phillips, was shot. Mrs. Fragle heard nothing in the store and noticed no one in the store except another woman behind her until the victim was discovered in the cooler sometime after the shooting. The victim made no statements to her. Nor was Mrs. Fragle at any time in fear of being shot or appear to have been in any danger any more than any other person who may have unknowingly come within the general geographic area, but not within the sight of, the shooter.

It is clear to this court that Mrs. Fragle's existence as a potential trial witness and that of her sister as potential trial witness are not a basis for recusal in the impending jury trial. While this court sees no basis for excusing itself, to avoid any further question as to Mrs. Fragle's and Mrs. Rosati's status in this case, the court hereby refers this portion only of the recusal motion to President Judge Albert E. Acker for review and determination. See *Commonwealth v. Bryant,* 328 Pa. Super. 1, 476 A.2d 422 (1984).

---

7. Mrs. Rosati was not a witness at the preliminary hearing, but the district attorney in the informal conference of July 22, 1987 indicated her testimony would at best be cumulative of Mrs. Fragle.