### SCALA et al. v. UNITED STATES.
No. 4556.

Circuit Court of Appeals, Seventh Circuit.
Dec. 9, 1931.

Elwood G. Godman, of Chicago, Ill., for appellants.

George E. Q. Johnson, U. S. Atty., and Henry L. Balaban, Asst. U. S. Atty., both of Chicago, Ill., for the United States.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

Appellants were found guilty under counts 1, 2, and 4 of an indictment of four counts, count 1 charging them with having, on June 5, 1930, at Streator, Ill., falsely assumed and pretended to be federal prohibition agents of the United States, and in such pretended character demanding and obtaining from one Oliver $700; count 2, that on same date and place, and under same false pretenses, they demanded and obtained from him $200; count 3, that under same false pretenses, they demanded of him $600 at Chicago on June 9; and count 4, that on June 5, 1930, at Streator, they conspired to commit the offenses described in the other counts.

Three errors are relied upon by appellants: (1) That there was no proof that appellants were not in fact federal officers; (2) that the District Court erred in charging the jury that they had a right to consider the fact that appellants had made no statements that they were either innocent or guilty; and (3) that the penalty imposed is excessive and unauthorized by law, and constitutes the infliction of a plurality of penalties for one offense, in contravention of the Federal Constitution.

It appears that appellants entered Oliver's home while he was away to get some medicine for his wife, who that morning gave birth to a child. They said they were federal officers, exposing badges underneath their coat lapels, and proceeded to go through the house. They said they found liquor and would be obliged to make arrests. On Oliver's return they seized him and told him he was under arrest, repeating that they were federal officers. He protested that the small amount of liquor found was only for his family use; but they said he would have to go to Chicago, suggesting, however, that the matter might be fixed up if he would pay them $2,000. He denied having any money, but under the persuasive influence of guns which they pressed against his ribs suggested he might get some from his brother, to whom he was told to telephone, but not to relate the circumstances. This he did, and in a short time the brother appeared and gave him $700, but was not permitted to see appellants, to whom Oliver turned over the money. Appellants remained at the house, and after the brother's departure declared they would have to have more money, and they required Oliver again to telephone the brother, who returned with $200, which was given appellants. They then said this was not enough, and told him they would require $600 more. They exacted from him a promise to appear with the $600 at a certain place in Chicago at a specified time the following Monday morning.

Oliver told the police at Streator, who arranged that Oliver should go to the place indicated, at the time fixed, and they, with Chicago police, would be in waiting. He went there and waited, and soon appellants appeared and were taken into custody. They were searched, and no official badges or any other indicia of their being federal officers were found on them.

■ While it must in some manner appear that the accused were not federal officers, this negative proposition is fairly inferable from character of proof much less direct and formal than might be required to affirmatively establish official capacity. Any facts and circumstances which to the average mind would fairly tend to indicate that these men were not federal officers will be sufficient to warrant the jury in reaching such conclusion. In our judgment the fact that when they were seized at Chicago they had then upon them no indicia whatever of federal

authority was sufficient to warrant the inference that they were not such officers; for had they been such it is reasonable to assume the search would have disclosed some indication of it; and if it may be inferred they were not federal officers when they were searched on the 9th, it is likewise inferable that they were not officers on the 5th. Indeed, it might with propriety be said the extraordinary conduct of these men was not the conduct of federal officers.

In Kelly v. United States, 46 F.(2d) 286 (C. C. A. 3), a conviction under the same statute was upheld. It seems from the opinion there that the only indicated evidence that the defendants were not federal officers as they represented themselves to be was their showing of some badge at the time of the extortion, which one of the defendants threw away at the time of the arrest—quite in line with the situation here, where badges were displayed by appellants at Oliver's home, but were not found on their persons later at Chicago.

But even without affirmative evidence upon the negative averment of want of official capacity, we believe it would be inferable that appellants were not federal officers. In Graves v. United States, 150 U. S. 118, 121, 14 S. Ct. 40, 41, 37 L. Ed. 1021, it is said: "The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable. [Citations.]" That the rule does not have broad application is manifest from what immediately follows: "But this presumption does not apply to every fact in the case which it may be in the power of the defendant to prove. He is not bound to anticipate every fact which the government may wish to shew in the course of the trial, and produce evidence of that fact."

It is evident from the indictment here that the government had no knowledge that appellants were federal officers, else they would have been indicted as such, rather than as falsely pretending to be such. It is further evident that if appellants were federal officers they had it peculiarly and practically exclusively within their own knowledge and power to show it. If they had official status, they of all persons knew its source, and without themselves testifying could doubtless have adduced evidence of it, which, unless divulged to the prosecutor, was to him a closed book.

In our judgment this situation brings the case fairly within the principle of those where the prosecution is based on nonexistence of a license, permit, or other privilege to defendant, and wherein it has been held that if no evidence thereon appears at the trial, it will be presumed that had the evidence thereon appeared it would have been unfavorable to the defendant. Albert v. United States (C. C. A.) 281 F. 511; McCurry v. United States (C. C. A.) 281 F. 532; Laurie v. United States (C. C. A.) 278 F. 934.

In United States v. McNaugh (C. C. A.) 42 F.(2d) 835, 837, there is discussion of the proof under an indictment for a conspiracy to violate the same statute, and language was used which might be deemed to express an opposite view. But the situation there was quite different. It seems McNaugh and two others were together tried and convicted. McNaugh alone appealed. The charge being conspiracy, in order to justify conviction of McNaugh it must appear that to her knowledge her alleged coconspirators were not federal officers. As to McNaugh the opinion recites, "It may be said that Mae McNaugh nowhere represented that she was acting as a federal officer, * * *." So unless it appeared that she was conspiring to have her codefendants falsely represent themselves to be federal officers, her conviction could not be sustained, and the judgment was reversed. There was no occasion for the court to pass upon the sufficiency of the proof to convict her codefendants.

■ The portion of the court's charge objected to is: "You have the further testimony that these men were then taken back and lodged in jail under a warrant and the testimony of the officers and of Mr. Larimer to the effect that at the time they were arrested and at the time they were taken back and the time they were confined in jail the defendants made no statements either that they were innocent or that they were guilty; admitted nothing as to the charge and said they would not talk at that time, and expected to have counsel, or that in substance." This followed a quite lengthy and detailed statement, in the charge, of the facts and circumstances appearing in evidence. It had been testified without objection that the appellants would not talk or make any statements whatever. In this respect the court merely stated what the evidence was, not giving prominence to this over the many other items of evidence to which the charge referred.

But it seems to us that any possible harm therefrom would be substantially neutralized by what subsequently occurred. At the close of the charge the court asked if there were suggestions or exceptions. In answer, counsel complained of the above charge in that it called attention to testimony that appellants made no statements as to their innocence or guilt, alleging that there was no duty upon them to do so. The court then said to the jury that appellants were not required to make such statements, and further that the jury had been advised not to consider the remarks of the court in this connection as in any wise passing on the guilt or innocence of appellants; but, to satisfy counsel, the court in effect then repeated that charge to the jury, counsel thereupon saying, "All right." The court then inquired, "Anything else?" And counsel answered, "Nothing else, Your Honor."

It would seem from this that, at that very time, the matter was disposed of by the court to the evident satisfaction of appellants' counsel, and no exception thereafter appears.

Respecting the contention of double penalty, it appears that on each of counts 1 and 2 there was imposed three years' imprisonment, and a fine of $1,000; and on the fourth, the conspiracy count, two years and $1,000.

Counsel contends that there appears but a single crime, for which the maximum penalty specified by the statute defining it (18 USCA § 76 [section 32, Criminal Code]) is three years' imprisonment and $1,000 fine. For the government it is contended that, as to counts 1 and 2, the above-recited facts indicate as distinct offenses (a) the demand in the false guise of being federal officers, which resulted in the production of $700, and (b) the demand under like guise which resulted in the production of $200 more.

While it seems to the writer that what occurred at the house on the 5th, during the several hours that appellants were there, resulting in the extortion of the $700 and the $200, constituted but a single crime, the majority of the court are of the opposite view, being of opinion that, while false representation of official character was the same in both, that element alone did not constitute the crime; that that element, in conjunction with the further element of the demanding or obtaining the money, constituted the crime; that the first offense was complete when the demand was made and the $700 obtained; and that the subsequent demand, resulting in their obtaining the $200, was another and distinct offense.

It is further contended for appellants that, assuming guilt under counts 1 and 2, there is nothing in the record to indicate their guilt of the crime of conspiracy beyond the actual commission of the consummated crimes. If the charge of conspiracy related alone to that conduct which resulted in payment by Oliver of the $700 and the $200, counsel's contention that conspiracy does not appear from evidence only of the substantive crime would require consideration. But that is not here the case. While at Oliver's house there was in essence an agreement among appellants, still in their false guise as federal officers, that they would meet at Chicago on the 9th at an indicated place, where Oliver, who under duress assented, would pay, and appellants obtain, the sum of $600.

In our judgment this sufficiently indicated an unlawful undertaking and conspiracy among appellants to violate the federal statute denouncing as a crime the demanding or obtaining, in the pretended capacity of a federal officer, from any person, any money or valuable thing. In this respect there was a conspiracy to demand and obtain $600, a conspiracy which never resulted in the completed act. We are of opinion that the record definitely discloses a conspiracy quite apart from the substantive offenses of which appellants were convicted under counts 1 and 2.

If appellants were properly convicted of the three separate offenses, there can be no merit in the contention that upon each conviction the maximum penalty of imprisonment was imposed. If the several penalties imposed were within the statutory power of the court to inflict for the several offenses, the Court of Appeals is not concerned with the aggregate duration of the imprisonment or amount of the fines. Feinberg v. United States, 2 F.(2d) 955, 958 (C. C. A. 8); Scott v. United States, 283 F. 117 (C. C. A. 7); Carpenter v. United States, 280 F. 598 (C. C. A. 4); Peterson v. United States, 246 F. 118 (C. C. A. 4).

Such penalties, whatever the aggregate, do not transgress the constitutional inhibition upon "cruel and unusual punishment." See Badders v. United States, 240 U. S. 391, 36 S. Ct. 367, 60 L. Ed. 706; Ebeling v. Morgan, 237 U. S. 625, 35 S. Ct. 710, 59 L. Ed. 1151; Howard v. Fleming, 191 U. S. 126, 24 S. Ct. 49, 48 L. Ed. 121; and

612

In re Kemmler, 136 U. S. 436, 10 S. Ct. 930, 34 L. Ed. 519, where the question is discussed at some length.

Even though this court had supervisory power over the penalty, the atrociousness of the crimes disclosed by this record would suggest that no penalty within the power of the court to impose was too severe.

This record discloses a condition all too prevalent. When it came to the trial of these men, Oliver and others, who were in the house for some hours while appellants were there, appeared to have suffered a lapse of memory in their identification of them. Oliver himself, although stating at Chicago, in the presence of appellants and the officers who arrested them, that these were the men who got the money at his house in Streator, when testifying expressed doubt of their identity. There can be little doubt that the witnesses were terrorized, or that restitution had been made or promised. But it happened the identification did not fail. It was sufficient to warrant counsel for appellants, with commendable frankness, in stating at the outset of his brief: "However, the testimony, together with the circumstances disclosed by the evidence, is probably sufficient to justify the finding of the jury that the defendants were the persons who had called upon Oliver and secured the money from him."

The judgment of the District Court is affirmed.