## TAYLOR v. UNITED STATES.

### No. 9697.

United States Court of Appeals
District of Columbia.

Argued Feb. 10, 1948.

Decided April 19, 1948.

Mr. Robert I. Miller, of Washington, D. C., with whom Mr. Joseph A. McMenamin, of Washington, D. C., was on the brief, for appellant.

Mr. James C. McKay, Assistant United States Attorney, of Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, John C. Conliff, Jr., Assistant United States Attorney, and Sidney S. Sachs, Assistant United States Attorney, all of Washington, D. C., were on the brief, for appellee.

Before STEPHENS, Chief Justice, and CLARK and WILBUR K. MILLER, Associate Justices.

CLARK, Associate Justice.

This is an appeal from a judgment of conviction and a sentence on an indictment charging defendant with falsely impersonating and attempting to exercise the duties of a police officer.

The Government's evidence tended to show the following facts: Following numerous complaints, a Park Policeman and a Park Policewoman (both dressed in plain clothes) parked in the vicinity of the Langston Golf Course, at Benning Road and Oklahoma Avenue, Northeast, on the evening of June 28th. Shortly after midnight on the morning of June 29, 1947, appellant approached the parked car, flashed an electric flashlight into the car and told them he was a police officer from No. 9 Precinct and in charge of all the grounds, that they had no business there after 9 o'clock p. m., and that they would have to move on. Officer McEwen asked appellant to show his credentials, which appellant refused to do, whereupon McEwen identified himself as a police officer, showed appellant his credentials and informed appellant that he was under arrest. Appellant then said that he was not going to submit to arrest, that he was going to walk away, and that if the officer knew what was good for him, he had better not follow. With these words he put his hand behind him in a "menacing manner," which, according to the officer's testimony, led the latter to believe that appellant intended to attack him. Officer McEwen then fired three shots into the ground; whereupon appellant surrendered and was taken into custody.

Appellant controverted the testimony of the officers, testifying that he was walking past the parked car and was hailed from the car by a man's voice, that he flashed his light into the car to see who was calling him, that the man then asked him what he was doing out alone at that hour, to which he replied that he had a right to be out as he was a grown man. Appellant further testified that the officer then said, "I thought you might be one of those officers from No. 9 we've heard so many complaints about," to which witness had responded, "I could be."

The trial court over-ruled various motions for a directed verdict, the jury found defendant guilty, and he was duly sentenced. From this conviction he appeals.

Appellant strenuously urges that there was a fatal variance between the indictment and the proof, in that the scene of the alleged impersonation was in a public park, which is subject to the jurisdiction of the United States Park Police, and therefore a false statement of one claiming to be a member of the Metropolitan Police does not constitute impersonation of an officer. An examination of Sections 4—120 [1] and 4—201 [2] of the D.C.Code (1940) shows the fallacy of this contention. Under these sections, Metropolitan Police and United States Park Police have concurrent jurisdiction over United States Parks within the District of Columbia.

It is further contended that the two police officers were legally parked and that appellant would have had no authority to order them to move on if he had actually been the officer he is accused of impersonating. This argument completely ignores United States Park Regulations, Art. 3.32, sec. 3,[3] which specifically forbids parking

[1] § 4—120 provides: "The provisions of the several laws and regulations within the District of Columbia for the protection of public or private property and the preservation of peace and order are extended to all public buildings and public grounds belonging to the United States within the District of Columbia."

[2] § 4—201 provides: "The watchmen provided by the United States Government for service in any of the public squares and reservations in the District of Columbia shall, after August 5, 1882, be known as the 'United States park police.' They shall have and perform the same powers and duties as the Metropolitan police of the District."

[3] "Night Parking. Parking of vehicles between dark and daylight in park areas where no lighting equipment is installed is prohibited."

between the hours of darkness and daylight in park areas.

■ Far more important is the obvious and necessary conclusion that in the enactment of Code Section 22—1304 [4] it was clearly the legislative intent that the citizen should be protected against the exercise of excess jurisdiction by an imposter as well as impersonation in the genuine jurisdiction which might have been exercised by a legitimate officer. It is a fact known by all men that bona fide police officers may, and sometimes do, exceed the limits of their authority, and that many citizens, ignorant of the limitations upon the authority of the police, and fearful of acting at their peril in defiance of illegal police orders, have submitted to them. Of course there is a remedy for that, which has nothing to do with this case. But to suggest, as appellant does here, that it was the legislative intent to punish an imposter for the exercise of the legitimate duties of a police officer and at the same time let him go unwhipped of justice for an impersonation which involved acts in excess of the authority of a bona fide officer is absurd. Lamar v. United States, 1916, 241 U.S. 103, 36 S.Ct. 535, 60 L.Ed. 912; United States v. Barnow, 1915, 239 U.S. 74, 36 S.Ct. 19, 60 L.Ed. 155.

Most serious of appellant's contentions is that the trial court erred in refusing to direct a verdict of acquittal "because there was no proof that the defendant was not a police officer." Appellant correctly asserts that the burden was upon the Government to prove the crime charged in the indictment beyond a reasonable doubt. The question is whether the Government sustained this burden to such an extent as to justify the trial court in permitting the case to go to the jury. Once the case was submitted to the jury the questions of credibility of witnesses (where, as here, there was direct conflict in the evidence) and of reasonable doubt were for the jury.

We consider the trial counsel for the Government exceedingly blameworthy in that he failed to offer the direct proof that appellant was not a police officer by the easy and conventional manner of proving such crimes, which is to say by putting on the witness stand an officer having charge of the official rolls and records of the Metropolitan Police and testifying from them whether or not appellant was at the time a member of that force. The Government failed to adduce this simple and convincing testimony.

■ We find no merit in the contention of the Government that their case was aided by the failure of appellant to establish affirmatively that he was in fact a Metropolitan Police officer. The burden was on the Government and remained on the Government, although it is an established principle that where defendant is charged with falsely pretending to be an officer of the United States, and he fails to produce evidence showing he was such an officer, the presumption arises that the evidence, if produced, would have been unfavorable to defendant. Scala v. United States, 7 Cir., 1931, 54 F.2d 608, certiorari denied, 1932, 285 U.S. 554, 52 S.Ct. 411, 76 L.Ed. 943.

The case, then, boils down to these simple propositions: 1. Did the Government, blundering in its presentation and ignoring the safe and simple but somewhat more troublesome method of proving its case, nevertheless produce sufficient evidence to justify the trial court in submitting the case to the jury? 2. Did the evidence submitted to the jury by the Government justify, in the light of *all* evidence, the verdict arrived at by the jury?

It is our opinion that the evidence was sufficient and that it justified the verdict. Without exculpation of the Government's halting and feeble presentation of the case, we believe that it was possible for the

---

[4] D.C.Code (1940) § 22—1304: "Whoever falsely represents himself to be a judge of the municipal court, notary public, police officer, or other public officer, or a minister qualified to celebrate marriage, and attempts to perform the duty or exercise the authority pertaining to any such office or character, or having been duly appointed to any of such offices shall knowingly attempt to act as any such officers after his appointment or commission has expired or he has been dismissed from such office, shall suffer imprisonment in the penitentiary for not less than one year nor more than three years."

trial judge, as the learned Justice who tried the case evidently did, to piece together enough evidence to justify him in allowing the case to go to the jury.

There was evidence that at no time, either in assuming to order the officers to move on or upon demand of the officers at the time of his arrest, did defendant show any credentials. He attempted to escape and threatened the officer with bodily harm if the latter attempted to stop him. When searched after his arrest he was found not to have a badge.

■ From the evidence it was possible to piece together a case for the jury. As was said by Judge Alschuler, speaking for the court in Scala v. United States, supra: "While it must in some manner appear that the accused were not federal officers, this negative proposition is fairly inferable from character of proof much less direct and formal than might be required to affirmatively establish official capacity. Any facts and circumstances which to the average mind would fairly tend to indicate that these men were not federal officers will be sufficient to warrant the jury in reaching such conclusion." 54 F.2d at page 609.

■ We are of the view, therefore, from the evidence produced, that the trial court was justified in over-ruling the appellant's motion for a directed verdict and in submitting the case to the jury. To be sure there was direct conflict in the evidence, but that has been resolved by the jury. In our opinion there was sufficient evidence to sustain the verdict.

Affirmed.