**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Angel F. MELENDEZ and Maria Ann Dutra, Defendants-Appellants.**

**No. 14736.**

United States Court of Appeals Seventh Circuit.

Jan. 10, 1966.

Arthur E. Engelland, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Richard G. Schultz, Chicago, Ill., for appellee.

Before HASTINGS, Chief Circuit Judge, SCHNACKENBERG, Circuit Judge, and GRUBB, Senior District Judge.

GRUBB, Senior District Judge.

Defendants Angel F. Melendez and Maria Ann Dutra appeal from judgments of conviction and the sentences imposed thereon for receiving and concealing, and facilitating the transportation and concealment of c. 28.2522 grams of marihuana after unlawful importation thereof, in violation of § 176a., Title 21 U.S. C.A.

Defendants were charged with this offense in count one of the indictment in the case. In count four they were further charged with conspiracy to commit a violation of the narcotic laws together with three other defendants, Monserrate Aviles, Michael Rivera, and Antonio Madrid Segovia. The jury returned a verdict finding Melendez and Dutra guilty as charged in count one, but was undecided as to their guilt on count four. The court entered a judgment of not guilty to count four and judgment of conviction on count one and sentenced Melendez and Dutra to terms of commitment of ten years each. The other defendants in the case were convicted on their pleas of guilty to the charges against them and received five-year sentences each.

Appellants claim error in the denial of their motion to suppress evidence and in the imposition of allegedly arbitrary sentences.

The course of events culminating in this criminal prosecution had its beginning on April 25, 1964, when Antonio Segovia was arrested in Fort Stockton, Texas by Customs agents of the United States. He disclosed that he was delivering an automobile loaded with over 100 pounds of marihuana to a man named "Freddie" whom he was to meet at the Casa Blanca Motel in LaGrange, Illinois. He had previously delivered a 100 pound shipment to a garage located at the rear of the YMA Health Club, at 1623 North California Avenue, in Chicago, where it was unloaded by Segovia, Monserrate Aviles and Michael Rivera.

The agents accompanied Segovia to the Casa Blanca Motel. After their arrival on April 28, 1964, Segovia waited in Room 9 of the motel in which there was a concealed microphone and he was kept under surveillance by the agents.

On May 2, 1964, at about 10:00 A.M., a 1957 green Pontiac automobile stopped at the motel. Two of its four occupants, Melendez and Dutra, entered Segovia's room. Melendez told Segovia that Freddie had sent him and that he had received a call from Mexico. He inquired where Segovia had been. In answer to Segovia's question, Melendez stated that Freddie was in Mexico. He further told Segovia that they would take the car to a garage which they had for it and that he would come back that night with someone who could ride with Segovia so that he would not get lost enroute. On Segovia's representation that he needed money for

meals, Melendez gave him $10.00 and stated that he would return that night.

Later that morning, the agents overheard Melendez and Dutra conversing with an unidentified man at the El Canario Restaurant in Chicago. Dutra said that they had come from the motel and that she thought that the "kid" was all right. He had asked her for a sawbuck, and "that fits." She had talked to the people in Mexico the night before and they would have to go to the A & P to pick up some big boxes "to put it in." Everything seemed all right. They were planning to return to the motel at 7:30 P.M.

Shortly after noon on that same day, Aviles and Rivera arrived at O'Hare Field from their trip to Mexico and later drove to the Casa Blanca Motel where they met Segovia in his room. They were arrested by the agents at 4:15 P.M. after they asked Segovia for the marihuana.

The agents had kept the apartment at 1621 North Fairfield Avenue, Chicago, Illinois, under surveillance and had seen Melendez and Dutra enter and leave these premises and had also observed the 1957 Pontiac in this vicinity. The agents also knew that this apartment was in the immediate vicinity of the garage located at the rear of the YMA Health Club to which the delivery of the previous shipment of marihuana had been made. Additionally, Dutra had been seen in the company of Aviles on April 30, 1964, just prior to his departure for Mexico.

At about 6:15 P.M. on May 2, 1964, the agents went to and entered Apartment 3, at 1621 North Fairfield Avenue, Chicago, Illinois. They placed Melendez and Dutra under arrest and searched their persons and the premises, including the kitchen and bedroom. The agents then took Melendez and Dutra to the United States Customs House where they further searched their persons and clothing, including Dutra's purse. Some time that evening, at about 9:00 or 10:00 P.M., they also searched the 1957 Pontiac in which Melendez and Dutra had been seen

earlier. The marihuana seized in these various searches was used in evidence against Melendez and Dutra on their trial. The agents had no warrant for the arrest of Melendez and Dutra and no search warrant.

*Search and Seizure*

Appellants contend that there was no probable cause for their arrest and that any search and seizure incidental to an arrest without probable cause, necessarily, is invalid under the Fourth Amendment. Further, it is claimed that if it should be determined that there was a valid arrest, the search and seizure were nevertheless illegal because there was forcible entry without notification of authority and because the searches at the Customs House and of the automobile later in the evening were remote from the time and scene of the arrest.

■ Probable cause for an arrest is grounded on facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information that the person has committed or is about to commit an offense. Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

■ At the time of the arrest of Melendez and Dutra, the officers knew of the shipment of marihuana destined for a consignee named Freddie who had by then been identified as Monserrate Aviles. Statements made by Melendez and Dutra at the Casa Blanca Motel and at the El Canario Restaurant established that they were acting for "Freddie" in checking on the arrival of Segovia and, of course, of the shipment of marihuana he was carrying in his automobile. They discussed arrangements for the delivery of the automobile and disposition of the marihuana. Although the word "marihuana" was not mentioned, the reference to "it" for which they were intending to get boxes from the A & P may reasonably

have been understood, in the context of the whole conversation, as relating to the contents of the automobile rather than to defendants' effects at their apartment. They discussed verification of the identity of Segovia whom they had not known previously.

The agents further knew of a prior shipment to a place in the immediate vicinity of defendants' residence which had been unloaded by "Freddie," or Aviles, and that Dutra had been seen with Aviles just prior to his departure for Mexico.

The information possessed by the arresting officers amounts to more than suspicion compounded by suspicion. The facts and circumstances of which the agents had direct and otherwise reliable information warranted a reasonable belief that Melendez and Dutra were acting in complicity with Aviles in regard to the shipment of marihuana transported by Segovia in violation of the narcotics laws of the United States. The arrests of these defendants were not in violation of their constitutional rights.

The additional grounds for suppression of the evidence raised on appeal were not presented to the trial court. The record reflects conflict in the testimony concerning the officers' entry into the apartment. There is no affirmative evidence establishing the failure to give notice of authority or lack of consent to the search at the Customs House or of the automobile. On the record before this court, defendants have not met their initial burden of establishing the invalidity of the search and seizure. See Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Jones v. United States, 362 U.S. 257, 361, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The failure to present and develop these factual and legal questions for determination by the trial court prevents their consideration on appeal. United States v. Jones, 204 F.2d 745, 748 (7th Cir. 1953), cert. den. 346 U.S. 854, 74 S.Ct. 67, 98 L.Ed. 368; Westover v. United States, 342 F.2d 684, 689 (9th Cir. 1965); and see Ker v. State of California, 374 U.S. 23, 43–44, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Shavin, 320 F.2d 308, 313 (7th Cir. 1963), cert. den. 375 U.S. 944, 84 S.Ct. 349, 11 L.Ed.2d 273.

*Validity of Sentences*

The claim that there was an abuse of discretion in the imposition of sentences rests on the fact that defendants Melendez and Dutra, who stood trial, received a more severe penalty than did the other defendants who were convicted on their pleas of guilty to the same or similar offenses, involving substantially greater amounts of marihuana.

The sentences in question were within and, in fact, less than the statutory maximum under § 176a., Title 21 U.S.C.A. The amount of narcotics involved in a particular violation is not determinative of the penalty to be imposed for the offense. There is no showing as to the state of appellants' prior records or that application was made for probation by appellants. The jury refused to credit appellants' denial of any knowledge of the marihuana found on their persons, in their apartment, and automobile. Cf. United States v. Wiley, 278 F.2d 500 (7th Cir.1960).

It cannot be said that the punishment imposed by the trial court is without justification. Scala v. United States, 54 F.2d 608, 611 (7th Cir.1931), cert. den. 285 U.S. 554, 52 S.Ct. 411, 76 L.Ed. 943; United States v. DeMarie, 261 F.2d 477, 479 (7th Cir.1958). The single fact of the disparity of the sentences imposed in this case does not bring it within the exceptional category that may call for the exercise of the appellate court's supervisory control. Simpson v. United States, 342 F.2d 643, 645 (7th Cir.1965).

For the foregoing reasons, the judgments of conviction and sentences must be and they are hereby affirmed.