UNITED STATES of America, Appellee,

v.

Daniel King BRAINARD, Appellant.

No. 83–5242.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 10, 1984.

Decided Oct. 4, 1984.

Jake Arbes, Atlanta, Ga. (C. Michael Abbott, Abbott & Arbes, P.C., Atlanta, Ga., on brief), for appellant.

Douglas Cannon, Asst. U.S. Atty., Greensboro, N.C. (Kenneth W. McAllister, U.S. Atty., Greensboro, N.C., Becky M. Strickland, Paralegal Specialist on brief), for appellee.

Before RUSSELL, HALL and CHAPMAN, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Daniel King Brainard appeals from his convictions following his second jury trial on multiple counts of mail fraud, arising from his role in a fraudulent investment scheme. We affirm.

Brainard and three co-defendants, Halton Q. Bittick, Sheldon S. Moss and Sheldon Rothman, were originally indicted on January 28, 1980 on 18 counts of mail fraud, 18 U.S.C. §§ 1341 and 2. Brainard and Bittick were additionally charged with one count of making a materially false and misleading statement to the Securities and Exchange Commission (SEC), in violation of 15 U.S.C. § 78ff and 18 U.S.C. § 2. A superseding indictment filed on February 25, 1980 deleted Brainard from the SEC count. Moss pled guilty to all charges, while charges against Rothman were dismissed. The first jury trial led to convictions of both Brainard and Bittick on mail fraud counts 3 to 13, 15, and 18, while Bittick was also convicted on the SEC count. Both defendants received concurrent sentences of five years, and Bittick was fined $12,000. On appeal, we reversed and remanded for a new trial, finding that the district court had erred in failing to admit hearsay statements by Moss exculpatory of Brainard and Bittick. *United States v. Brainard*, 690 F.2d 1117 (4th Cir.1982). Prior to retrial Bittick pled guilty to the SEC count, while the mail fraud counts against him were dismissed pursuant to a plea bargain; he received an eight month sentence and $5,000 fine. Upon retrial, Brainard was again convicted on mail fraud counts 3, 4, 6 to 13, 15, and 18, and received a sentence of 48 months.

I.

The facts of this complex case are recounted in our prior *Brainard* opinion, 690 F.2d at 1119–21, and need only be briefly discussed here. Brainard and Bittick were co-owners of National Executive Planners, Inc. (NEP), a small investment company located in Greensboro, North Carolina. Moss, a Chicago businessman, engaged

Brainard in July 1973 to market investments in Television Marketing Corp. (TVM), an enterprise controlled by Moss, of which Rothman was an officer. TVM supposedly distributed and marketed various consumer products, and offered to investors a return of 12%, with investments secured by the accounts receivable of large retailers such as Sears, Roebuck. TVM was in fact nothing more than a Ponzi scheme concocted by Moss, and the interest to investors was paid by the fresh investments of victims. Over several years TVM became the most significant investment marketed by NEP, and Brainard and his sales personnel persuaded some 1000 investors to put over four million dollars into TVM. The supposed security offered for the investments was worthless, and the scheme collapsed when North Carolina issued a cease and desist order in September 1978 against further sales of TVM.

Brainard did not defend the legitimacy of TVM at trial, and the principal question of fact at trial was whether Brainard was a knowing participant in the scheme or had acted in good faith in selling TVM to his clients.

## II.

A. On this appeal Brainard seeks a dismissal or new trial owing to the inadvertent loss of several allegedly crucial exhibits from the first trial through no fault of the defense. Due to the convoluted circumstances of this issue, it is necessary to present the facts at some length. On March 29, 1983 the Clerk of Court for the Middle District of North Carolina sent notice to Brainard's newly retained counsel and to the government that certain of Brainard's trial exhibits, which had been transmitted to this Circuit with the record on the first appeal, were missing. Attached to that notification was a letter from the clerk's office of the Fourth Circuit, in which a senior deputy clerk represented that Brainard's former counsel had claimed to have copies of all defense exhibits. Brainard's new counsel received the case files from former counsel in March 1983, but did not examine the defense exhibits, allegedly relying on the representation that all exhibits were present. A motion hearing was held prior to trial on May 11, 1983, and defense counsel made no motions with respect to the missing exhibits at that time. Brainard's retrial commenced on July 6, 1983, and on July 11 defense counsel advised the government that defendant's former exhibit 35, a videotape of three TVM commercials, was missing. The parties agreed to stipulate to the former existence of that exhibit and its content, and said stipulation was duly presented to the jury. The defense failed to present any information concerning other missing exhibits until July 14, when, after the close of the government's case and after all defense witnesses had testified, defendant moved for dismissal or a new trial on the ground of destruction of evidence. The district judge initially stated that he considered any such claim waived due to delay in presentation. In September 1983, after the jury had rendered its verdict, a post-trial hearing was held concerning the missing exhibits. The parties stipulated that defendant's former counsel would have testified that he did not claim to have copies of all defense exhibits from the first trial. The senior deputy clerk of the Fourth Circuit testified that the clerk's office had conducted a thorough investigation and could not locate the missing exhibits. Altogether ten exhibits were alleged by the defense to be missing and unavailable from other sources. Of these, four are claimed on appeal to have been critical to defendant's case.[1]

---

1. Two of these former exhibits, Nos. 5 and 20, allegedly evidenced a relationship between Moss and Sears, Roebuck, supporting Brainard's claim to belief that Moss actually did business with major retailers. No. 35, represented by the defense as the most crucial exhibit, was, as noted above, a videotape of three commercials promoting TVM products, allegedly substantiating Brainard's belief that TVM was a legitimate business. No. 36 was a sales brochure from a factoring house, allegedly indicating why it was more profitable for TVM to seek investments from private investors rather than pay factoring costs. It appears, however, that information

■ The district court denied defendant's motions on the grounds of delay in raising the matter of the lost evidence and failure to show prejudice from the loss. We need not decide, on this appeal, whether defendant suffered the requisite prejudice from the loss of the exhibits in question, although we note that defendant's proof of such prejudice was limited. *See United States v. Valenzuela-Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3447, 73 L.Ed.2d 1193 (1982) (defendant required to show that testimony of deported witnesses would have been "material and favorable to the defense"). Rather, we hold that defendant has waived any possible objections arising from the missing exhibits through failure to make a timely investigation and presentation of such claim to the district court. There is no indication of bad faith on the part of the government in this matter, and we may assume as true the allegations of defense counsel that the absence of the copies of the exhibits was not actually realized until the second trial was well under way. Nonetheless, the record clearly shows that counsel had knowledge of the loss of a number of original exhibits some three months prior to trial, and that the files of defendant's former counsel which purportedly contained copies of such exhibits were available for examination during at least the same period of time. Under such circumstances, counsel could reasonably have been expected to ascertain whether copies of the missing exhibits were actually extant prior to trial.

B. At the second trial, over defendant's objection, the government was permitted to introduce evidence of another investment scheme which Brainard had marketed to one client for Moss prior to embarking on TVM. The earlier scheme, known as Golden West Utilities was similar to TVM in many respects, the principal difference being that Golden West purported to offer as security a second mortgage on undeveloped Arizona land, rather than accounts receivable of major retailers. Golden West came

comparable to exhibit No. 36 was contained within defendant's exhibit 20–C as well and was

to an abrupt end when Moss was enjoined from selling unregistered securities in September 1972. Brainard was aware that his client had lost the bulk of his investment when Golden West went bankrupt.

■ Defendant contends that this extrinsic act evidence was improperly introduced as bearing on his character, in particular suggesting a propensity to commit frauds. Such a claim is belied, however, by the government's admission that Brainard was not personally committing any fraud in connection with Golden West. The government defends the admission of the Golden West evidence as bearing on Brainard's "knowledge," a permissible use of extrinsic act evidence under Fed.R.Evid. 404(b). We find that the evidence in question was properly admitted on that basis. To justify admission it was not necessary that the government prove Brainard's actual knowledge that Golden West was fraudulent; had Brainard actually been serving his clients' interests in good faith as he claimed, he could have been expected to undertake a more diligent investigation of TVM where he knew that a client had suffered a substantial loss on a previous Moss investment scheme designed in a comparable fashion. Thus, the Golden West evidence was relevant to the credibility of Brainard's defense, and could properly be admitted. Whether it was unduly prejudicial was a matter for the discretion of the district court under Fed.R.Evid. 403, and that discretion has not been abused. *See United States v. Beahm,* 664 F.2d 414, 417 (4th Cir.1981); *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

■ C. We perceive no basis for Brainard's contention that he was impermissibly punished for the exercise of his right to trial because he received a substantially longer sentence than his co-defendant Bittick, who had pled guilty to a single

thus in evidence at the second trial.

offense prior to trial. The single fact of a disparity in sentences between a defendant who stands trial and a co-defendant who pleads guilty does not require appellate reversal, as has often been recognized. *See, e.g. United States v. Melendez*, 355 F.2d 914, 917 (7th Cir.1966). The first trial led to convictions of both Brainard and Bittick on the same mail fraud counts, and identical terms of imprisonment followed. After the second trial, however, Brainard had been found guilty of multiple mail fraud counts as before, but Bittick faced sentencing on but a single charge. We are not presented with a situation where both defendants stood convicted of identical charges after retrial.

### III.

We find the remaining issues raised by defendant to be without merit.

Accordingly, the judgment of conviction of the defendant is

AFFIRMED.