66 F.3d 318
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tommy Eugene WALKER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willie Lee HARRIS, a/k/a Big Daddy, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward Harold SAUNDERS, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bryant DUBOSE, Defendant-Appellant.
 Nos. 94-5661, 94-5745, 94-5746, 94-5765.
 United States Court of Appeals, Fourth Circuit.
 Argued July 12, 1995.
Decided Sept. 18, 1995.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, Senior District Judge. (CR-94-17)
 W.D.N.C.
 AFFIRMED.
 ARGUED: Jerome Joseph Froelich, Jr., MCKENNEY & FROELICH, Atlanta, GA; Bruce Maloy, MALOY & JENKINS, Atlanta, GA, for appellants. Robert Jack Higdon, Jr., Asst. U.S. Atty., Charlotte, NC, for appellee. ON BRIEF: Randolph Marshall Lee, Charlotte, NC, for appellant Saunders; Robin S. Lymberis, Charlotte, NC, for appellant Walker. Mark T. Calloway, U.S. Atty., Charlotte, NC, for appellee.
 Before NIEMEYER, MICHAEL and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 After a three-day jury trial, defendants Tommy Eugene Walker, Willie Lee Harris, Edward Harold Saunders, Jr., and Bryant Dubose were each convicted of conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and 846. The defendants allege numerous errors on appeal, but we affirm.
 
 I.
 
 2
 The testimony of law enforcement officials and of the defendants' co-conspirators established the following.
 
 
 3
 Fred Arthur Williams, who testified on behalf of the government, met defendant Harris at a jazz festival in Atlanta, Georgia, in early 1989. They agreed that Harris would supply Williams with cocaine to be sold in Charlotte, North Carolina, where the street price of the drug was greater than the price then prevailing in Atlanta. Williams and defendant Saunders began making almost daily trips to ferry cocaine from Atlanta to Charlotte.
 
 
 4
 After several months business was booming, and Harris suggested that Williams use several homes in quiet, residential areas of Charlotte as cocaine storage facilities. Ralph McCallum (who also testified on behalf of the government) and defendant Tommy Walker lived in two of these homes. The homes were equipped with safes, in which cocaine and money were kept. In addition, government witness Linda Peek Walker testified that Tommy Walker had from time to time delivered cocaine to her at Williams' direction.
 
 
 5
 Defendant Dubose's job, according to Williams, was to take the bulk cocaine delivered to Charlotte and to prepare it for sale by cutting it into smaller quantities. Eventually, Dubose also obtained cocaine in Florida and distributed it in Charlotte. Two other witnesses confirmed Dubose's role.
 
 II.
 A.
 
 6
 Defendant Saunders argues that insufficient evidence was presented against him at trial to sustain his conviction for conspiracy. We disagree.
 
 
 7
 When reviewing a sufficiency claim, we view the evidence in the light most favorable to the government. The verdict must stand if there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). If "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the conviction must be upheld. Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982).
 
 
 8
 "To sustain the conspiracy conviction, there need only be a showing that [Saunders] knew of the conspiracy's purpose and some action indicating his participation." United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir.1984), cert. denied sub nom. Alvarez v. United States, 469 U.S. 1105 (1985).
 
 
 9
 According to Williams, he and Saunders went to Atlanta every day "[f]or about three, four months" to buy cocaine from Harris. Williams also said that he and Saunders would sell that cocaine, then use the proceeds to buy more cocaine for resale. From this evidence a rational jury could have concluded beyond a reasonable doubt that Saunders knew about, and participated in, the conspiracy.
 
 B.
 1.
 
 10
 Defendant Tommy Walker also claims that the government did not present sufficient evidence to establish his involvement in the conspiracy. Again, we disagree.
 
 
 11
 Tommy Walker's role was to store cocaine in his home for Williams and to make cocaine deliveries when Williams asked him to do so. Witness Linda Peek Walker testified that on four occasions Tommy Walker delivered cocaine to her after she had asked Williams for cocaine. She also testified that when Tommy Walker brought the cocaine, he came in Williams' car, a Thunderbird.[1] Williams testified that Tommy Walker made cocaine deliveries on his behalf and that Tommy Walker agreed to store cocaine in a "rolling safe in his laundry room" for Williams. This evidence was sufficient for a rational jury to conclude that Tommy Walker was part of the conspiracy to distribute cocaine.
 
 2.
 
 12
 Defendant Tommy Walker also contends that the trial court erroneously failed to strike the testimony of Linda Peek Walker. He argues that because Linda Peek Walker failed to identify him in court, her testimony about his involvement in the conspiracy was too unreliable to be considered by the jury. This argument also lacks merit.
 
 
 13
 Even though Linda Peek Walker could not point to Tommy Walker in court, she did say that a man who was missing a few of his fingers had delivered cocaine to her. She also testified that when she asked Williams for cocaine, he told her that a man named "Tommy" would be making the delivery and that Tommy would be driving Williams' Thunderbird. Other evidence established that Tommy Walker is indeed missing three fingers. Williams himself testified that he told Tommy Walker to drive the Thunderbird when making cocaine deliveries. From this, the jury could have inferred that defendant Tommy Walker was the man who delivered cocaine to Linda Peek Walker. That she failed to identify Tommy Walker in court affects only the weight to be given her testimony, not its admissibility. The court did not err in refusing to strike Linda Peek Walker's testimony.
 
 III.
 
 14
 Many of the government witnesses in this case testified pursuant to plea agreements. One requirement in each agreement was that the witness be available to take a polygraph examination. At trial the defendants sought to introduce these polygraph provisions and to offer evidence that no witness ever had been subjected to a polygraph.
 
 
 15
 The defense's theory was that the government witnesses were unreliable, in part because the government must have been afraid to subject them to polygraph examinations. The trial court refused to allow the defendants to introduce the fact that no polygraph examinations had been given. In addition, the court ordered that the plea agreements themselves, which were introduced, be redacted to eliminate any language about polygraph examination. The defendants claim that this was error, but we disagree.
 
 
 16
 This circuit takes a dim view of polygraph evidence. We have permitted use of polygraph evidence in only one limited circumstance: when an expert relies on a polygraph examination to form the basis for his opinion, he may be cross-examined about the polygraph examination, but only for the purpose of testing the validity and reliability of his expert opinion. United States v. A & S Council Oil Co., 947 F.2d 1128, 1133-35 (4th Cir.1991). Id. at 1135. This circumstance is not present here. Defendants, however, urge us to follow United States v. Lynn, 856 F.2d 430 (1st Cir.1988), where the First Circuit held that a defendant may cross-examine a government witness about a clause in a plea agreement requiring a polygraph examination. We decline to follow the First Circuit because it would be "such a drastic departure from our previous practice" of excluding polygraph evidence. A & S Council Oil Co., 947 F.2d at 1134.
 
 
 17
 Defendants also argue that Federal Rule of Evidence 106, the Rule of Completeness, should have prevented the trial court from ordering redaction of the plea agreements admitted into evidence. That rule, however, would apply only if the part of the plea agreement about polygraph examination "ought in fairness to [have been] considered contemporaneously with" the rest of the agreement that was introduced. Fed.R.Evid. 106. To be admitted under the Rule of Completeness, the part of the document sought to be admitted still must be relevant, United States v. Lewis, 954 F.2d 1386 (7th Cir.1992), and otherwise admissible, United States v. Woolbright, 831 F.2d 1390 (8th Cir.1987). As discussed above, evidence of the polygraph requirement was not otherwise admissible. The trial court did not err in refusing to invoke Rule 106.
 
 IV.
 
 18
 The defendants also argue that the admission of two items of hearsay at trial was reversible error. Tom Jacobs, an agent of the Drug Enforcement Agency, testified as to statements made to him by Williams and by Henry "Nate" Johnson, another member of the conspiracy. Williams testified early in the trial; Johnson testified immediately after Jacobs.
 
 A.
 
 19
 Agent Jacobs' testimony about Williams' statement occurred as follows:
 
 
 20
 Question: Now at that point did Mr. Williams make any statements to you or anyone that you overheard where he got the cocaine from?
 
 
 21
 MR. FROELICH [defense counsel]: Objection, hearsay, Your Honor, what the witness--
 
 
 22
 THE COURT: Fred Arthur Williams who just testified?
 
 
 23
 WITNESS JACOBS: Yes, sir.
 
 
 24
 THE COURT: Members of the jury, you'll consider this testimony for the purpose of determining whether it corroborates the testimony of Mr. Williams, if you find it so does corroborate his testimony.
 
 
 25
 Question: Go ahead.
 
 
 26
 Answer: Mr. Williams stated he received the cocaine from Mr. Johnson.
 
 
 27
 This statement was consistent with Williams' earlier testimony in the case. A prior consistent statement is not hearsay if "offered to rebut an express or implied charge against the declarant [here, Williams] of recent fabrication or improper influence or motive." Fed.R.Evid. 801(d)(1)(B). During earlier cross-examination of Williams, the defense suggested that Williams lied in order to avoid severe punishment for his own extensive role in the conspiracy. This suggestion amounted to a charge of recent fabrication.
 
 
 28
 A prior consistent statement, however, may be admitted under Rule 801(d)(1)(B) only if it was made "before the alleged fabrication, influence, or motive came into being." Tome v. United States, 115 S.Ct. 696, 700 (1995). Williams spoke to Jacobs only after his arrest, and thus after Williams' motive to fabricate already had arisen. The trial court erred, then, in allowing Jacobs to testify to Williams' statement. It is of no consequence that the trial court instructed the jury that it could consider the statement only for purposes of corroboration. United States v. Acker, 52 F.3d 509, 517 (4th Cir.1995).
 
 
 29
 This error, however, was harmless beyond a reasonable doubt and cannot be grounds for reversal. Fed.R.Crim.P. 52(a). Jacobs's testimony that Williams said he received cocaine from Johnson was merely cumulative; both Williams and Johnson testified that Johnson supplied cocaine to Williams. Even if the defense objection had been sustained, we do not believe the outcome of the trial would have been any different. See United States v. Casoni, 950 F.2d 893, 914-16 (3d Cir.1991) (hearsay error resulting in admission of cumulative evidence held to be harmless).
 
 B.
 
 30
 Agent Jacobs also testified that Johnson "stated he was afraid for his family and didn't want to say anything else." The defendants argue that the statement should have been excluded because it was hearsay and unduly prejudicial.
 
 
 31
 Although the statement is hearsay, it falls within one of the traditional exceptions to the rule against hearsay: "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition [such] as intent, plan, motive, design, mental feeling, pain, and bodily health" is not excludable under the rule against hearsay. Fed.R.Evid. 803(3).
 
 
 32
 The defendants also claim that Johnson's statement "improperly put fear and violence before the jury box," and therefore it should have been excluded on the ground that its prejudicial impact substantially outweighed its probative value. See Fed.R.Evid. 403. This objection was not raised at trial, however. For this reason we may set aside the defendants' convictions only if admitting the evidence amounted to plain error. Fed.R.Crim.P. 52(b); United States v. Moore, 11 F.3d 475 (4th Cir.1993), cert. denied, 114 S.Ct. 1864 (1994).
 
 
 33
 Because the defense failed to raise this objection at trial, on appeal the defense bears the burden of demonstrating: (1) that there was an error; (2) which was plain; (3) which affected substantial rights; and (4) which seriously affected the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 113 S.Ct. 1770, 1777-79 (1993); Moore, 11 F.3d at 481; United States v. Brewer, 1 F.3d 1430, 1434-35 (4th Cir.1993). The defendants have not explained how a brief statement about Johnson's fears made in the course of a three-day trial, during which ample evidence of their guilt was produced, so polluted the proceedings as to deny them a fair trial. Accordingly, the defendants have failed to meet their burden under the plain error test.
 
 V.
 
 34
 Defendant Saunders claims prosecutorial misconduct during final argument. During his closing argument the prosecutor erroneously said, "Fred Williams told you that Mr. Saunders was involved in this conspiracy early on for about a year and a half." In fact, Williams testified that Saunders was involved only for six months. Saunders' counsel, however, did not object to the prosecutor's statement when it was made and instead argued the discrepancy to the jury in his closing argument. Furthermore, the court instructed the jury prior to argument, "Listen closely to the arguments. Do not consider them to be evidence, and if your recollection differs from that of the attorneys, it is your recollection that counts, not what the attorneys say or what I say or anyone else says about this case."
 
 
 35
 We presume that the jury obeyed the court's instructions and that the jury rendered a decision on the basis of the evidence it heard, rather than on the basis of the prosecutor's erroneous characterization of that evidence. See Richardson v. Marsh, 481 U.S. 200, 210 (1987) ("juries are presumed to follow their instructions").
 
 
 36
 Prosecutorial misconduct justifies reversal of a conviction only if the remarks complained of were both improper and prejudiced the defendant's rights so severely as to deprive him of a fair trial. United States v. Brockington, 849 F.2d 872, 875 (4th Cir.1988). The misstatement appears not to have been intentional. Neither was it "pronounced and persistent." See id. In any event, we cannot see how this minor error could have prejudiced Saunders to any measurable degree.
 
 VI.
 
 37
 The defendants allege several errors relating to the jury instructions.
 
 A.
 
 38
 Counsel for defendants Harris and Dubose argued in their closing that the evidence against their clients was unreliable, in part because the police failed to use particular investigative techniques, such as tape recording conversations and making controlled buys. After these arguments but before counsel for the remaining defendants made their closing arguments, the court informed counsel that it would give the following additional instruction as part of its charge to the jury:
 
 
 39
 During the trial, you have heard testimony of witnesses and arguments of counsel that the government did not utilize specific investigative techniques. For example, there was a reference to failure to tape controlled conversations or make controlled buys of substances. You may consider these facts in deciding whether the government has met its burden of proof because as I told you, you should look at the evidence or lack of evidence in considering whether the defendant is guilty. There is no legal requirement that the government must use any of these specific investigative techniques to prove its case. There is no legal requirement to make tape recordings of conversations or make controlled buys of controlled substances or do any other specific kind of test. The government is not required to make those kind of tests available to you. Law enforcement techniques are not your concern. Your only concern before you is whether the defendant's guilt or lack of guilt has been proved beyond a reasonable doubt.
 
 
 40
 The defendants claim that this sua sponte instruction violated their right to know, before closing argument, what jury instructions the court planned to give. See Fed.R.Crim.P. 30 (court shall inform counsel of proposed action on requests for particular instructions).
 
 
 41
 We agree with the government, however, that Rule 30 applies only to those instructions that are requested by a party. The rule does not apply when the court gives an unrequested instruction that it feels is necessary to the fair conduct of the trial. A court has the flexibility to give additional instructions in order to meet unforeseen circumstances arising as the trial proceeds. We also note that the particular language the court chose was very similar to that approved in United States v. Mason, 954 F.2d 219, 222 (4th Cir.), cert. denied, 504 U.S. 925 (1992). There was no error here.
 
 B.
 
 42
 Defendant Dubose asked the court to instruct the jury as follows:
 
 
 43
 Under the Federal Rules of Evidence, the government is permitted to introduce evidence of a defendant's other crimes, wrongs or acts when there is a sufficient showing that these other acts provide proof of a defendant's motive, opportunity, intent, preparation, plan or, knowledge, to commit the crime charged here. [Rule 404(b).]
 
 
 44
 In this case, at no time during the trial has the government requested that this Court consider any extrinsic acts of Defendant Dubose for their admissibility under the principles of this federal rule.
 
 
 45
 The court refused to give this instruction.
 
 
 46
 We agree with the government that this instruction would have only confused the jury. The government was under no obligation to introduce any evidence that would have been admissible under Rule 404(b). And, the instruction could have led the jury to speculate the government had no evidence of Dubose's bad character. Thus the government argues that Dubose was trying to raise the issue of his good character without giving the government a chance for any rebuttal. Had Dubose wished to do so, he could have introduced evidence of his own good character directly, in accord with Rule 404(a)(1). This, of course, would have exposed him to any evidence of his bad character that could have been offered by the government in rebuttal. The court properly denied the requested instruction.
 
 C.
 
 47
 The defendants also asked the court to define "reasonable doubt" as follows:
 
 
 48
 The government must prove every element of the crime charge [sic] beyond a reasonable doubt. Proof beyond a reasonable doubt does not mean proof beyond all possible doubt. Possible doubts or doubts based purely on speculation are not reasonable doubts. A reasonable doubt is a doubt based on reason and common sense. It may arise from the evidence, the lack of evidence, or the nature of the evidence.
 
 
 49
 Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives. If you are convinced that the government has proved the defendant guilty beyond a reasonable doubt, say so by returning a guilty verdict. If you are not convinced, say so by returning a not guilty verdict.
 
 
 50
 The court properly denied this request because it was not required to define "reasonable doubt." See Victor v. Nebraska, 114 S.Ct. 1239, 1243 (1994) ("The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course."); United States v. Adkins, 937 F.2d 947, 950 (4th Cir.1991).
 
 D.
 
 51
 Evidence was presented indicating that defendant Saunders was excluded from participating in the conspiracy ("kicked out") after only several months of involvement. Saunders claims that the district court should have given the jury a limiting instruction to the effect that testimony about events occurring after he was kicked out of the conspiracy should not be considered in weighing his case. This claim is without merit. To begin with, Saunders did not request such an instruction. Thus, we may set aside Saunders' conviction only if omission of the instruction amounted to plain error. Fed.R.Crim.P. 52(b); see Henderson v. Kibbe, 431 U.S. 145, 154 (1977) ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court."). In any event, to convict for conspiracy the government needs to establish only that the defendant knew of the general purpose of the conspiracy and that he voluntarily took steps to further the goals and objectives of the conspiracy. Collazo, 732 F.2d at 1205. The evidence of Saunders' knowing and voluntary involvement with the drug distribution operation before being kicked out was sufficient to support his conviction.[2] The lack of a limiting instruction did not amount to plain error.
 
 VII.
 
 52
 Defendant Saunders also claims that the district court erred in failing to hold an evidentiary hearing on his motion for a new trial. His motion was based in part on the claim that members of the jury saw him being moved about the courthouse in handcuffs and shackles. The trial court, however, took care in finding that Saunders did not make even a threshold showing that his contention had any merit. Saunders' claim was not supported by affidavit or any other evidentiary material. Accordingly, the trial court did not abuse its discretion in denying Saunders an evidentiary hearing on the matter.
 
 VIII.
 
 53
 The defendants finally contend that their sentences were calculated improperly. They claim that the trial court attributed too much cocaine to each of them, causing their offense levels under the Sentencing Guidelines to be too high. We disagree.
 
 
 54
 Facts supporting a sentence must be proven by a preponderance of the evidence. United States v. Engleman, 916 F.2d 182, 184 (4th Cir.1990). We will overturn the trial court's findings only if those findings are clearly erroneous. United States v. Mark, 943 F.2d 444, 450 (4th Cir.1991), citing 18 U.S.C. Sec. 3742(e). In addition, when no drugs are seized, the trial court must approximate the quantity of drugs actually involved in the offense. U.S.S.G. Sec. 2D1.1, Commentary (n. 12); United States v. Kennedy, 32 F.3d 876, 887 (4th Cir.1994), cert. denied sub nom. Ingram v. United States, 115 S.Ct. 939 (1995).
 
 
 55
 Harris was assessed a base offense level of 38 for conspiracy to distribute between 150 and 500 kilograms of cocaine between 1989 and 1993. The evidence supports this offense level. Witnesses Bobby Birtha and Jeffrey Smith testified that Harris directed the delivery of large amounts of cocaine. Williams also testified that he received between 150 and 160 kilograms of cocaine from Harris' organization. Harris could have foreseen the possession and distribution of more than 150 kilograms of cocaine.[3]
 
 
 56
 Dubose was assessed a base offense level of 36 for his involvement in the conspiracy, being responsible for between 50 and 150 kilograms of cocaine. Government witnesses testified (1) that he was responsible for collecting money from drug sales and (2) that he knew where large amounts of cocaine, in excess of 50 kilograms during the time he was involved with the conspiracy, were being stored.
 
 
 57
 Tommy Walker was directly involved in delivering drugs at the direction of Harris. Witnesses Williams, Birtha, Antonio Watts, and Linda Peek Walker testified to this effect. He was held responsible for between 150 and 500 kilograms of cocaine, yielding a base offense level of 38. Defendant Walker further argues that the trial court's calculation was in error because a co-conspirator who pleaded guilty, Ralph McCallum, was found to be responsible only for between 50 and 150 kilograms. However, "[t]he simple fact of a disparity in sentence between a defendant who stands trial and a co-defendant who pleads guilty does not require appellate reversal." United States v. Brainard, 745 F.2d 320, 323-24 (4th Cir.1984), cert. denied, 471 U.S. 1099 (1985).
 
 
 58
 Saunders was found to be responsible for between 15 and 50 kilograms of cocaine, yielding a base offense level of 34. While Saunders was involved in the conspiracy he traveled almost daily to Atlanta to assist Williams in obtaining cocaine. The court's finding, on the basis of Williams' estimate that the two of them had transported more than 15 kilograms during the course of their relationship, was not clearly erroneous.
 
 
 59
 All of the sentences were proper.
 
 IX.
 
 60
 The convictions and sentences are affirmed.
 
 
 61
 AFFIRMED.
 
 
 
 [1]
 Williams eventually gave Tommy Walker the Thunderbird for Christmas one year, but Williams "never got around to" formally transferring the title to Walker
 
 
 [2]
 We note that Saunders' shorter involvement was taken into account at sentencing. The court found him responsible for only between 15 and 50 kilograms of cocaine
 
 
 [3]
 For sentencing purposes, quantities attributable to persons convicted of conspiracy to distribute illegal drugs are determined by examining "the quantity of [drugs] reasonably foreseeable to each conspirator within the scope of his agreement." United States v. Irvin, 2 F.3d 72, 78 (4th Cir.1993). See also U.S.S.G. Sec. 1B1.3(a)(1)(B) ("all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" are taken into account when determining sentence)